STAEBLER-KEMPF OIL COMPANY *v.* MAC'S AUTO MART, INC.

1. WORDS AND PHRASES—TERMS—CONTRACTS.

The word "terms," when relating to legal rights, is a technical word of well-defined meaning and when used in contracts generally means the propositions, limitations, and exactions which comprise in whole or in part the agreement and govern the contracting parties, defining what they obligate themselves to do or not to do.

2. CONTRACTS—CONSTRUCTION.

One phrase contained in a contract cannot be interpreted in the abstract, as the meaning of any particular part of an instrument can only be found by an examination of the whole.

3. DEEDS—COVENANT RUNNING WITH THE LAND—SALE OF GRANTOR'S PRODUCTS.

Successor grantee in deed containing a covenant running with the land that for the next 10 years thereafter the grantor would furnish to the grantee gasoline, oil and other lubricants "at such prices and on such terms as are customarily furnished to other dealers in like products" in the same area, is legally obligated to sell the grantor's gasoline at the same price as the other retailers, notwithstanding he had not signed the customary dealer's contract containing an express stipulation that the dealer would sell only the grantor's gasoline and at the same price charged by the other retailers supplied by the grantor, since the 2 most important aspects of the dealings involved in the covenants are the prices to be charged and terms upon which the gasoline will be delivered to the dealers.

REFERENCES FOR POINTS IN HEADNOTES

[2] 12 Am Jur, Contracts, § 241.
[4, 5] 36 Am Jur, Monopolies, Combinations, and Restraints of Trade, § 153.
[5] 36 Am Jur, Monopolies, Combinations and Restraints of Trade, § 147.

4. MONOPOLIES—RESTRAINT OF TRADE—STATUTES.

Anti-trust act making void a contract in restraint of trade, without defining "restraint of trade," is construed as invalidating only those contracts imposing an unreasonable rerestraint (CL 1948, § 445.701).

5. SAME—RESTRAINT OF TRADE—REASONABLENESS.

A contract provision which restrains trade for a just and honest purpose, for the protection of the legitimate interests of the party in whose favor it is imposed, and which is reasonable as between them and not specially injurious to the public is valid (CL 1948, § 445.701).

6. SAME—COVENANT RUNNING WITH LAND—PRICE-FIXING AGREEMENT.

Covenant which ran with the land, theretofore owned by grantor for 20 years, and which required grantee for ensuing 10 years to sell only grantor's gasoline, oil and other lubricants which were to be furnished "at such prices and on such terms as are customarily furnished to other dealers in like products" in the area was not primarily or solely a price-fixing agreement, hence, was valid under the State anti-trust act (CL 1948, § 445.701).

7. APPEAL AND ERROR—QUESTIONS REVIEWABLE—MONOPOLIES—FAIR TRADE—STATUTES.

Effect of State fair trade act upon covenant by grantee in a deed that for the ensuing 10 years only the grantor's gasoline, oil and other lubricants will be sold on the premises and will be furnished by the grantor "at such prices and on such terms as are customarily furnished to other dealers in like products" in the area is not discussed where such covenant is not found to have been an unreasonable restraint of trade under the State anti-trust act (CL 1948, §§ 445.151 et seq.; § 445.701).

Appeal from Washtenaw; Breakey (James R., Jr.), J. Submitted October 10, 1950. (Docket No. 66, Calendar No. 44,844.) Decided January 8, 1951. Rehearing denied March 1, 1951.

Bill by Staebler-Kempf Oil Company, a Michigan corporation, against Mac's Auto Mart, Inc., a Michigan corporation, to restrain sale of gasoline at less than established prices. Decree for plaintiff. Defendant appeals. Affirmed.

*Burke, Burke & Smith,* for plaintiff.

*Conlin, Conlin & Parker (Edward F. Conlin* and *Richard J. Mann,* of counsel), for defendant.

Butzel, J.  The Staebler-Kempf Oil Company, a Michigan corporation, is a wholesale and retail dealer in "Marathon" gasoline and other branded petroleum products in the city of Ann Arbor, Michigan.  It supplies 7 retail outlets owned and conducted by others and also 1 that it runs and owns. The oil company and the retailers operate under what is called the "customary dealer's contract," which contains, among other provisions, an agreement by the retailer to sell only the oil company's gasoline, and at the same price charged by the other retailers supplied by the oil company.  The price is set at the oil company's own retail station and is varied to meet the lowest price charged by the oil company's competitors.  The oil company is the smallest wholesale distributor of gasoline in Ann Arbor.

In 1946, the oil company conveyed property in Ann Arbor, which it had owned for over 20 years, to the Martin Sales & Service Company.  The deed contained the following covenant:

"It is a condition of this conveyance that the party of the second part (vendee) agrees that should he construct and operate a gasoline filling station or service motor vehicles with gasoline, oil and other lubricants on the premises above described, or deal in such commodities thereon, during a period of 10 years beginning on August 19, 1946, said party of the second part will purchase from Staebler-Kempf Oil Company, a Michigan corporation, of Ann Arbor, Michigan, all gasoline, oil and other lubricants sold on the premises, and said Staebler-Kempf Oil Company agrees that it will furnish the reasonable

requirements of the party of the second part for such products, unless prevented by causes beyond its control, *at such prices and on such terms as are customarily furnished to other dealers in like products in the Ann Arbor, Michigan, area.* (Emphasis added.) The party of the second part agrees that this provision shall be incorporated in any deed executed by the party of the second part, and the covenants herein made shall run with the land for such term of 10 years."

In 1947, Martin Sales & Service conveyed the premises by a deed containing the above-quoted covenant to Mac's Auto Mart, Inc., a Michigan corporation, defendant herein.

In the early part of 1949, the defendant's representative, Balfe MacDonald, asked the oil company to install some new equipment at the service station. The record is not clear as to whether the service station was being operated by the defendant prior to 1949. After discussions, it was finally agreed that the oil company would loan to the defendant equipment consisting of gasoline pumps, storage tanks, signs and some other articles, worth about $1,500 at cost, and that the defendant would sign the customary dealer's contract. The oil company installed the equipment. It also delivered about 1,600 gallons of gasoline to the defendant, for which the latter paid cash, the usual terms of payment by the plaintiff's retailers. MacDonald then refused to sign the tendered contract, objecting to the uniform price clause contained therein. He was asked why he had not objected earlier before the oil company had installed the equipment, and he replied that he had not because he knew very well what the oil company's reaction would be. The defendant then started to sell gasoline at a price lower than charged at plaintiff's other outlets. The oil company filed a bill for an injunction to restrain the defendant from

underselling the other retail stations. The defendant has appealed from the decree granting the injunctive relief.

The defendant's first contention is that the phrase in the covenant "at such prices and on such terms as are customarily furnished to other dealers in like products in the Ann Arbor, Michigan, area," refers only to prices and "terms of payment," and because of this limited meaning it is not legally obligated to sell the oil company's gasoline at the uniform price charged by the other retailers of the oil company. It contends that when the parties negotiated for the equipment, they did not intend to be bound by any oral understanding, and since the written contract has not been signed, the plaintiff can only recover the value of the equipment installed. The defendant offers to pay for this equipment and will abide by the terms of the covenant to the extent that it will purchase all gasoline from the plaintiff, but is unwilling to sell at the uniform price.

The plaintiff insists that the defendant is bound by the contract whether it has been signed or not because the phrase in the covenant in the deed refers to "terms of performance," which include a uniform price clause.

The word "terms" has been defined by our Court. In *City of Detroit* v. *Detroit United Railway*, 173 Mich 314, 322, we said:

" 'Terms' and 'conditions' often used synonymously, when relating to legal rights, are technical words of well-defined meaning. As used in contracts generally, they mean the propositions, limitations, and exactions which comprise in whole or in part the agreement and govern the contracting parties, defining what they obligate themselves to do or not to do."

It is true that the word "terms" in the phrase "prices and terms" often refers only to the time of

payment, when the phrase is taken by itself. However, the phrase cannot be interpreted in the abstract. The meaning of any particular part of an instrument can only be found by an examination of the whole. The clause in question is the only clause in the covenant relating to the oil company's uniform dealings with its retailers. The 2 most important aspects of these dealings are the prices to be charged, and the terms upon which the gasoline will be delivered to the retailers. It is not strange that they should be named together, and their mere proximity is not a sufficient reason to alter the usual definition of the word "terms."

The defendant is legally obligated by the covenant in the deed to sell the oil company's gasoline at the same price as the other retailers, since that is the requirement imposed by the oil company. It is immaterial that the tendered contract is unsigned.

The defendant contends that the agreement between the parties is void and unenforceable under the provisions of the anti-trust act of 1899 (CL 1948, § 445.701 [Stat Ann § 28.31]), and under our decisions in *Hunt* v. *Riverside Co-Operative Club,* 140 Mich 538 (112 Am St Rep 420); *W. H. Hill Co.* v. *Gray & Worcester,* 163 Mich 12 (30 LRA NS 327); *Mulliken* v. *Naph-Sol Refining Co.,* 302 Mich 410. It is urged that the contract is an attempt to stifle competition among the retailers supplied by the plaintiff, and is a horizontal price-fixing agreement to protect the plaintiff in the operation of its own retail outlet, and that these are unlawful purposes under the statute.

The statute, if read literally, would seem to support the defendant's contentions. However, the statute does not define restraint of trade, and the definition has been judicially supplied. It has long been held that a contract would not be construed as in restraint of trade unless the restraint was unrea-

sonable. *Standard Oil Co. of New Jersey* v. *United States,* 221 US 1 (31 S Ct 502, 55 L ed 619, Ann Cas 1912D 734); *People, ex rel. Attorney General,* v. *Detroit Asphalt Paving Co.,* 244 Mich 119; see, also, 41 CJ, p 109.

Chief Justice CHRISTIANCY provided the guide by which reasonableness could be determined in *Hubbard* v. *Miller,* 27 Mich 15, 19 (15 Am Rep 153), where he said:

"If, considered with reference to the situation, business and objects of the parties, and in the light of all the surrounding circumstances with reference to which the contract was made, the restraint contracted for appears to have been for a just and honest purpose, for the protection of the legitimate interests of the party in whose favor it is imposed, reasonable as between them and not specially injurious to the public, the restraint will be held valid."

Does the covenant and tendered contract meet this test? The trial judge, in a well-written opinion below, said:

"It was not shown by any testimony that the purpose of plaintiff in incorporating the covenant in the deed was to control prices of gasoline or petroleum products in Ann Arbor and vicinity and stifle competition. On the contrary much weight must be attached to the fact that plaintiff owned this land for upwards of 20 years, during which period it had controlled the station and this outlet for plaintiff's products. Certainly plaintiff properly could reasonably restrict the use of the land in the hands of a purchaser,—as the covenant does for a period of 10 years. Had plaintiff retained ownership of the land there can be no question that plaintiff could have seen to it that only its products were sold on the premises *and at plaintiff's prices.*   *   *   *

"This then is not primarily or solely a price-fixing agreement but rather an agreement pursuant to a

covenant running with land which plaintiff sold and which plaintiff would not have sold without the covenant."

*Quinlivan* v. *Brown Oil Co.*, 96 Mont 147 (29 P2d 374), is factually similar to the instant case. In that case the court was asked to determine the validity of a covenant in a lease to a gasoline station. The covenant required the lessee to sell the lessor's gasoline at the same price charged at the lessor's other retail outlets. The Montana anti-trust act is similar to ours. The court found the covenant valid. It stressed the absence of intent to destroy the lessee's business, and balanced the small gain to the public against the lessor's honest business purpose.

Plaintiff was in the weakest competitive position of all the Ann Arbor wholesalers. An intra-company price war might well have forced it out of business and would not have appreciably affected the price of gasoline in that highly competitive industry.

The cases cited by the appellant are not in point. *Hunt* v. *Riverside Co-Operative Club, supra,* and *Mulliken* v. *Naph-Sol Refining Co., supra,* involved agreements which were patently injurious to the interests of the public. *W. H. Hill Co.* v. *Gray & Worcester, supra,* was decided prior to our Court's interpretation of the act of 1899 in *People, ex rel. Attorney General,* v. *Detroit Asphalt Paving Co., supra,* and does not represent the current judicial interpretation of the statute, nor do the facts present as fair and compelling a business purpose as is present in the instant case.

In view of our decision there is no need to discuss the effect of the Michigan fair trade act, CL 1948, § 445.151 (Stat Ann 1949 Cum Supp § 19.321) on this covenant.

The decree of the trial court is affirmed, with costs to the appellee.

Reid, C. J., and Boyles, North, Dethmers, Carr, Bushnell, and Sharpe, JJ., concurred.