*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BLAKE PUTMAN, M.D.,

   Plaintiff-Appellant,

v

HILLS AND DALES GENERAL HOSPITAL,

   Defendant-Appellee.

UNPUBLISHED
August 15, 2024

No. 365711
Tuscola Circuit Court
LC No. 2022-031670-NZ

Before: O'BRIEN, P.J., and CAVANAGH and SHAPIRO*, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant under MCR 2.116(C)(10). We affirm.

## I. BACKGROUND

In September 2018, plaintiff, who is a doctor, and defendant entered into a hospitalist agreement and an employment agreement. The parties agreed that plaintiff would treat patients at defendant's facilities in Tuscola County in exchange for a certain income. In April 2020, the parties renegotiated the employment agreement, which permitted termination of plaintiff's employment without cause with 90 days' notice. The 2020 employment agreement also provided for immediate termination of plaintiff's employment under certain circumstances.

In December 2020, after defendant learned that plaintiff planned to open his own medical practice, defendant terminated plaintiff's employment. Defendant initially gave plaintiff 90 days' notice, which was contemplated under the terms of both contracts. However, in January 2021, defendant immediately terminated plaintiff's employment after defendant learned that plaintiff was passing out business cards to patients while working at defendant's facilities. Defendant still paid plaintiff his salary for the duration of the 90-day-notice period.

Plaintiff began operating his own medical practice at some point. According to plaintiff, defendant's employees and agents engaged in a myriad of anticompetitive activities, which led plaintiff to file the instant action. Plaintiff's complaint alleged: (1) violation of the Michigan

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Antitrust Reform Act (MARA), MCL 445.785 *et seq.*, specifically MCL 445.773[1]; (2) breach of the 2020 employment agreement and the hospitalist agreement; (3) tortious interference with a business relationship; and (4) appropriation of plaintiff's name and likeness for commercial gain. Defendant answered the complaint and generally denied liability.

After the close of discovery, defendant moved for summary disposition under MCR 2.116(C)(10), and plaintiff opposed the motion.[2] After a hearing, the trial court issued a written opinion and order granting defendant's motion for summary disposition. This appeal followed.

## II. STANDARD OF REVIEW

This Court also reviews "de novo a trial court's decision on a motion for summary disposition." *Bailey v Antrim Co*, 341 Mich App 411, 421; 990 NW2d 372 (2022) (quotation marks and citation omitted). As explained by our Supreme Court:

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis, quotation marks, and citations omitted).]

## III. ANTITRUST

Plaintiff argues that the trial court erred by granting summary disposition in favor of defendant on the MARA claim. We disagree.

"The antitrust laws . . . were enacted for the protection of competition, not competitors." *Brunswick Corp v Pueblo Bowl-O-Mat, Inc*, 429 US 477, 488; 97 S Ct 690; 50 L Ed 2d 701 (1977) (quotation marks and citation omitted).[3] "The essence of all antitrust claims is harm to competition

---

[1] Plaintiff's complaint also cited MCL 445.772, but plaintiff concedes on appeal that, in response to defendant's dispositive motion, plaintiff did not advance a theory under MCL 445.772. By so doing, plaintiff effectively abandoned the claim under MCL 445.772.

[2] Plaintiff's response to defendant's motion for summary disposition does not appear in the lower court record, nor does it appear in the register of actions. It is nevertheless apparent from the record that plaintiff's response was provided to defendant and reviewed by the trial court before it ruled on defendant's motion. Plaintiff attached his response to his brief on appeal, and it has been reviewed by this Court.

[3] "The Michigan antitrust laws were patterned after the Sherman Anti-Trust Act," 15 USC 1 *et seq*. *ETT Ambulance Serv Corp v Rockford Ambulance, Inc*, 204 Mich App 392, 397; 516 NW2d 498 (1994). The Legislature has directed courts to "give due deference to interpretations given by

over the relevant product [or service] in the relevant geographic market to the detriment of the public." *American Key Corp v Cole Nat'l Corp*, 762 F2d 1569, 1579 n 8 (CA 11, 1985). "Each situation must be measured by the rule of reason[,] [a]nd a fundamental test is injury to the public." *Attorney General ex rel State Banking Comm'r v Mich Nat'l Bank*, 377 Mich 481, 492; 141 NW2d 73 (1966).

Plaintiff argues that defendant unlawfully attempted to create a monopoly in violation of MCL 445.773. MCL 445.773 states, "The establishment, maintenance, or use of a monopoly, or any attempt to establish a monopoly, of trade or commerce in a relevant market by any person, for the purpose of excluding or limiting competition or controlling, fixing, or maintaining prices, is unlawful." The term "trade or commerce" is defined in relevant part as "the conduct of a business for profit or not for profit producing or providing goods, commodities, property, or services . . . ." MCL 445.771(c). The term "person" is defined as "an individual, corporation, business trust, partnership, association, or any other legal entity." MCL 445.771(a).

Our Supreme Court has adopted the following definition of the term "monopoly":

> A monopoly, in the modern sense, is created when, as a result of efforts to that end, previously competing businesses are so concentrated in the hands of a single person or corporation, or a few persons or corporations acting together, that they have power to practically control the prices of commodities and thus to practically suppress competition.

> \* \* \*

> Monopoly may be said to be the result of the practical elimination of effective business competition which thereby creates a power to control prices to the harm of the public. [*Attorney General, ex rel State Banking Comm'r v Mich Nat'l Bank*, 377 Mich 481, 488-489; 141 NW2d 73 (1966) (quotation marks and citation omitted).]

"Monopoly power is the power to control prices or exclude competition." The laws are "directed against enhancement of price or throttling of competition . . . ." *United States v E I du Pont De Nemours & Co*, 351 US 377, 391; 76 S Ct 994; 100 L Ed 2d 1264 (1956). The existence of monopoly power can be established by either (1) presenting direct evidence of a defendant's exercise of control over prices or the actual exclusion of competitors; or (2) showing that a defendant has a high market share in a defined market through circumstantial evidence. *Re/Max International, Inc v Realty One, Inc*, 173 F3d 995, 1016 (CA 6, 1999).

To support "actual exclusion" in the market, plaintiff argued that defendant could destroy competition by not permitting physicians, such as plaintiff, to use its "hospital facilities." However, evidence does not support that plaintiff was actually excluded from performing

---

the federal courts to comparable antitrust statutes. . . ." MCL 445.784(2). Federal court decisions applying the Sherman Antitrust Act are thus considered persuasive authority when interpreting the MARA.

procedures at defendant's hospital. Plaintiff testified only that he made "an assumption" that he "wasn't allowed basically in the hospital" after he received letters terminating his employment. "[P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Bennett v Detroit Police Chief*, 274 Mich App 307, 319; 732 NW2d 164 (2006). While plaintiff testified that Jean Anthony, defendant's former president and Chief Executive Officer, stated that she would "take care of it" when plaintiff expressed concern about patients who he had scheduled procedures with, plaintiff's ability to perform surgical procedures at defendant's hospital was not contingent upon plaintiff being employed by defendant. Anthony testified that plaintiff maintained hospital privileges after termination of his employment, and plaintiff acknowledged that he retained privileges under the "Medical Staff Bylaws." Anthony added that, to the extent any procedures were cancelled, it was not through any fault of defendant.

Additionally, there is no evidence that defendant had the ability to prevent plaintiff from practicing medicine or performing procedures at other nearby medical facilities or hospitals. Plaintiff maintained privileges at Scheurer Hospital in Caro, Michigan, and was not prevented from opening and operating his own practice in Caro. Indeed, plaintiff began operating his own practice in February 2021. Importantly, plaintiff did not allege or offer any proof that defendant had any ability to control, fix, or maintain prices. This is important because "[t]he essence of all antitrust claims is harm to competition over the relevant product [or service] in the relevant geographic market to the detriment of the public." *American Key Corp*, 762 F2d at 1579 n 8. "Each situation must be measured by the rule of reason[,] [a]nd a fundamental test is injury to the public." *Attorney General ex rel State Banking Comm'r*, 377 Mich at 492. The heart of plaintiff's claim is that defendant prevented plaintiff from making money—not that defendant harmed the general public by restricting competition.

In sum, plaintiff neither alleged nor produced any evidence that defendant harmed any competition in the medical field in any relevant market. The trial court did not err by concluding that plaintiff failed to create a genuine issue of material fact as to whether defendant had monopoly power, and thus properly granted summary disposition in favor of defendant on this claim.

## IV. BREACH OF CONTRACT

Plaintiff argues that the trial court erred by granting summary disposition on his breach-of-contract claim. We disagree.

A claim for breach of contract requires a plaintiff to establish the following: (1) a contract existed, (2) that contract was breached, and (3) the breach damaged the non-breaching party. *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). "The measure of damages in relation to a breach of contract is the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601; 865 NW2d 915 (2014) (quotation marks and citation omitted). "The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). "[D]amages must not be conjectural or speculative in their nature, or dependent upon the chances

of business or other contingencies . . . ." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 551; 904 NW2d 192 (2017) (quotation marks and citation omitted; alterations in original).

"Lost profits, if properly proven, are an appropriate element of damages." *Body Rustproofing, Inc v Mich Bell Tel Co*, 149 Mich App 385, 390; 385 NW2d 797 (1986). "Before lost profits are recoverable, they must be proven with a reasonable degree of certainty as opposed to being based on mere conjecture or speculation." *Id*. The First Restatement of Contracts explains the degree of certainty required to establish lost profits:

> (1) Damages are recoverable for losses caused or for profits and other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. [Restatement of Contracts 1st, § 331.]

Plaintiff argues that he was damaged by defendant immediately terminating his employment. Although plaintiff acknowledges that he was paid his agreed-upon salary during the 90-day-notice period, plaintiff argues that he lost income because he was (1) not able to "pick up" other hospitalists' shifts and (2) unable to earn bonuses because the bonuses were conditioned on the number of procedures performed. In other words, plaintiff argues that if he would have been permitted to work the full 90-day-notice period, then he could have potentially earned additional income. This alleged loss is essentially a claim for "lost profits," and is a cognizable form of damages. See *Body Rustproofing*, 149 Mich App at 390.

Defendant does not challenge the fact that plaintiff theoretically lost income during the period he was not permitted to work between January 2021 and March 2021. Instead, defendant argues, and the trial court agreed, that plaintiff's damages were speculative. Other than stating he lost profits, plaintiff did not purport to explain, rationalize, or prove the amount of profits he potentially lost. Indeed, the lost profits were contingent on patients requiring procedures or other hospitalists wanting to give their shifts away to plaintiff (and plaintiff accepting). Plaintiff only offered calculations that concerned profits lost because patients did not transfer from defendant to plaintiff's new practice. Plaintiff did not offer any evidence to explain, on average, how much he earned in bonuses or how often he covered the rotation of another hospitalist during the term of his employment with defendant. If he had done so, or was able to do so, this evidence could have been used to calculate damages. But because the evidence does not afford a sufficient basis for estimating the amount of lost profits with reasonable certainty, the alleged damages are impermissibly speculative. Summary disposition was thus properly granted in favor of defendant on the breach-of-contract claim.

## V. TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

Plaintiff argues that the trial court erred by granting summary disposition in favor of defendant on plaintiff's claim for tortious interference with a business relationship. We disagree.

> The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional

interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted. [*Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 890; 706 NW2d 843 (2005).]

When determining whether a valid business relationship or expectancy existed, "[t]he expectancy must be a reasonable likelihood or probability, not mere wishful thinking." *Cedroni Assocs, Inc v Tomblinson, Harburn Assocs, Architects & Planners, Inc*, 492 Mich 40, 47; 821 NW2d 1 (2012) (quotation marks and citation omitted; alteration in original). Plaintiff argues that his ethical duties to his patients did not end upon termination of his contracts with defendant. While true, the relevant question is whether "a valid business relationship or expectancy" exists, *Health Call of Detroit*, 268 Mich App at 90, not whether plaintiff had a doctor-patient relationship with his former patients or an ethical obligation to his former patients.

Plaintiff did not present evidence of a binding agreement between him and his former patients, and evidence supports that the patients were free to seek medical care wherever they decided to do so. Indeed, it is axiomatic that choosing a medical provider is a highly personal decision, making it even more difficult for plaintiff to prove that he had a valid expectancy of doing business with former patients. Accord *Cedroni Assocs, Inc*, 492 Mich at 50-51 ("Where the ultimate decision to enter into a business relationship is a highly discretionary decision reposed within the structure of a governmental entity, it becomes more difficult for a plaintiff to prove that it had an expectancy of doing business with the governmental body."). Plaintiff even acknowledged that, when he started his independent practice, "every patient was new because it was a brand new practice."

On this record, there is insufficient evidence to conclude that "a valid business relationship or expectancy" existed.[4] Rather, as stated by the trial court, plaintiff merely hoped that patients he treated while he worked for defendant would seek treatment from him at his new practice. Accord *Upper Peninsula Power Co v Village of L'Anse*, 334 Mich App 581, 602; 965 NW2d 658 (2020) (holding, in relation to a tortious interference claim, that "the only reasonable expectation" the plaintiff had after a utility contract expired "was that it might be able to continue to provide electric service, but that ability was wholly dependent upon the [defendant] acquiescing to the continued service"). The trial court therefore properly granted summary disposition to defendant.

---

[4] Plaintiff contends that he can "establish, as a matter of law, that he had business relationships with each and every patient he treated" because he can show that (1) he treated those patients in a physician-patient capacity and (2) those patients paid for the treatment. Plaintiff omits the fact that those patients paid *defendant* for the services received, and *defendant* paid plaintiff for the services performed. Plaintiff plainly had a physician-patient relationship with his patients, but the business side of that relationship was handled wholly by defendant. That said, we leave open the possibility that a physician-patient relationship could give rise to a valid business relationship or expectancy under different facts.

# VI. APPROPRIATION

Plaintiff argues that the trial court erred by granting summary disposition in favor of defendant on the appropriation claim. We disagree.

Our Supreme Court "has recognized the right of privacy and that tort claims can be brought for invasions of that right under" the following theories:

> 1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.
>
> 2. Public disclosure of embarrassing private facts about the plaintiff.
>
> 3. Publicity which places the plaintiff in a false light in the public eye.
>
> 4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness. [*Battaglieri v Mackinac Ctr for Pub Policy*, 261 Mich App 296, 300; 680 NW2d 915 (2004) (emphasis, quotation marks, and citation omitted).]

Plaintiff alleged that defendant appropriated his name and likeness after plaintiff's employment with defendant was terminated. Plaintiff further alleged that defendant did so for its own commercial gain, i.e., so defendant could retain patients. As our Supreme Court explained:

> The invasion of privacy cause of action for appropriation is founded upon the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or to others. The right protected by the tort is in the nature of a property right, which the tort recognizes as being violated whenever the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit. . . . Thus, in contrast to the other forms of invasion of privacy, there need be no allegation that a statement about a plaintiff was an intrusion upon seclusion or private matters or that it was in any way false. Instead, any unauthorized use of a plaintiff's name or likeness, however inoffensive in itself, is actionable if that use results in a benefit to another. [*Id*. at 300-301 (alteration in original; quotation marks and citations omitted).]

In the Sixth Circuit, appropriation "has become known as the right of publicity." *Carson v Here's Johnny Portable Toilets, Inc*, 698 F2d 831, 834 (CA 6, 1983). See also *Hauf v Life Extension Foundation*, 547 F Supp 2d 771, 777-778 (WD Mich, 2008). Whereas the other theories of invasion of privacy protect a plaintiff's right "to be let alone," *Zacchini v Scripps-Howard Broadcasting Co*, 433 US 562, 571 n 7; 97 S Ct 2849; 53 L Ed 2d 965 (1977), the "right of publicity" protects a plaintiff's "pecuniary interest in the commercial exploitation of his identity," *Carson*, 698 F2d at 834. By tying appropriation to the right of publicity, a plaintiff must prove (1) he "has a pecuniary interest in his identity," and (2) "his identity has been commercially exploited by a defendant." *Hauf*, 547 F Supp 2d at 778. As the United States Supreme Court has explained:

The rationale (for protecting the right of publicity) is the straightforward one of preventing unjust enrichment by the theft of good will. No social purpose is served by having the defendant get free some aspect of the plaintiff that would have market value and for which he would normally pay. [*Zacchini v Scripps-Howard Broadcasting Co*, 433 US 562, 576; 97 S Ct 2849; 53 L Ed 2d 965 (1977) (alteration, quotation marks, and citation omitted).]

With respect to whether defendant benefited from the use of plaintiff's name and likeness, affidavits presented by plaintiff support certain patients continued to receive care from plaintiff despite defendant's alleged efforts to retain them as patients through the use of plaintiff's name and likeness. Additionally, as noted by defendant, evidence supports that defendant's employees or agents tried to remove plaintiff from its website and search engines. Defendant also informed patients that they could continue to receive medical treatment and care from plaintiff, and it is clear that some patients did. Plaintiff did not present any meaningful evidence to support his contention that defendant retained patients by defendant's brief use of plaintiff's name or likeness. Indeed, plaintiff's employment was terminated in January 2021, and he testified that the issue with his name being on defendant's voicemail only "went into February" 2021. It also appears that the issue with plaintiff's name and image being associated with defendant on Google was resolved around the same time. Plaintiff merely offered conjecture and speculation to support that defendant retained a certain number of patients, which is insufficient to establish a genuine issue of material fact. *Estate of Trueblood v P&G Apartments*, LLC, 327 Mich App 275, 289; 933 NW2d 732 (2019). The trial court thus did not err when it granted defendant's motion for summary disposition on plaintiff's appropriation claim.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh