HARDRICK v AUTO CLUB INSURANCE ASSOCIATION

Docket Nos. 294875, 298661, and 299070. Submitted April 5, 2011, at
   Detroit. Decided December 1, 2011, at 9:00 a.m. Leave to appeal
   denied, 493 Mich 867.

    William J. Hardrick was injured when he was struck by a vehicle
while a pedestrian. Auto Club Insurance Association admitted
responsibility for paying his personal protection insurance ben-
efits and paid Hardrick's parents $10.25 to $10.50 an hour to
provide the attendant-care services he needed. Hardrick brought
an action in the Oakland Circuit Court against Auto Club and
others, seeking a determination that his parents qualified as
"behavioral technicians," entitling them to charge a higher hourly
rate. Auto Club did not contest the number of hours that plaintiff's
parents worked providing attendant care. Before trial, the court,
Michael Warren, J., determined that Auto Club had violated its
discovery orders by providing belated and incomplete responses to
discovery requests. Plaintiff sought a default judgment, but the
court opted to impose a "lesser sanction," precluding Auto Club
from presenting witnesses or evidence and limiting it to cross-
examining plaintiff's witnesses and challenging his proffered evi-
dence. During trial, plaintiff's witness testified that the value of
the care provided by plaintiff's parents fell within the $25 to $45
an hour range. The trial court, Edward Avadenka, J., denied Auto
Club's motion to modify the sanctions and limited the jury's
reasonable-charge calculation to the range of $25 to $45. The jury
ultimately determined that $28 an hour represented a reasonable
charge for plaintiff's parents' attendant-care services. The court
then ordered Auto Club to pay plaintiff's attorney fees for unrea-
sonably delaying making proper payment. Auto Club brought
three separate appeals from the trial court's orders. The appeals
were consolidated.

    The Court of Appeals *held*:

    1. The trial court abused its discretion by selecting the discov-
ery sanction it imposed. A court's chosen discovery sanction must
be proportionate and just. The trial court clearly erred by conclud-
ing that Auto Club's discovery violations severely prejudiced
plaintiff. The trial was adjourned for nearly six months through no

fault of Auto Club following the imposition of the sanction. This additional time allowed additional discovery to occur and the extended period reduced the prejudice caused by Auto Club's earlier discovery violation and supported Auto Club's request to modify the sanction. The sanction was disproportionate and affected the entirety of the trial. The judgment of the trial court is vacated and the case is remanded for a new trial at which the trial court may impose a just sanction.

2. The market rate for agency-provided attendant-care service bears relevance to establishing the rate for family-provided services. The rates charged by an agency to provide attendant-care services are not dispositive of the reasonable rate chargeable by a relative caregiver, however, this does not detract from the relevance of such evidence. The rate charged by an agency for the care provided by a "behavioral technician" relates to a consequential fact, the reasonableness of plaintiff's claimed charge for his parents' "behavioral technician" services, and falls within the range of litigated matters in controversy. The fact that an agency charges a certain rate for precisely the same services that plaintiff's parents provide does not prove that the rate should apply to the parents' services. However, an agency rate for attendant-care services, routinely paid by a no-fault carrier, is a piece of evidence that throws some light on the reasonableness of a charge for attendant-care services, supplying one measure of the value of attendant care worthy of consideration by the jury. The fact that different charges for the same service exist in the marketplace does not render one charge irrelevant as a matter of law. The evidence of agency rates is relevant and the trial court properly rejected Auto Club's attempt to exclude it.

3. The Legislature selected reasonableness as the operative criterion for determining the amount of a charge for services. To the extent that the market for a particular service bears on its reasonableness, the parameters of the relevant market present jury questions. The relevant market for attendant-care services includes agency-provided services, family-provided services, and independently contracted care. It is implausible that a relevant market may exclude real-life competitors for precisely the same services.

4. The no-fault act does not confine a provider's reasonable charge to the amount the provider customarily receives from third-party payors.

5. A jury may consider a provider's wage as one piece of evidence relevant to the reasonable charge for attendant-care services. The reasonableness inquiry encompasses any evidence

bearing on fair compensation for the particular services rendered. Evidence of the employee's hourly wage throws some light on the reasonableness of a charge for attendant-care services. The jury should hear such evidence.

6. Evidence of the "overhead" incurred or not incurred by plaintiff's parents and the "opportunity cost," the amount that is sacrificed when choosing one activity over the next best alternative, of the parents in providing attendant-care services are relevant in calculating a reasonable charge for such services.

7. An objective standard guides an assessment of the term "reasonable charge."

8. The amount charged for attendant-care services substantially similar to the services provided by plaintiff's parents affords a logical basis for calculating a reasonable charge. The charges made by others for the same services provided by plaintiff's parents may incorporate fees and costs not present within plaintiff's household, but these shortcomings affect the weight of the evidence rather than its admissibility.

9. The trial court properly rejected instructing the jury pursuant to Auto Club's proposed Alternative A instruction because it would have precluded the jury's consideration of relevant evidence. The trial court should have presented Auto Club's proposed Alternative B, which recognized the multifaceted nature of the required calculation and allowed the jury to consider a broad spectrum of relevant evidence.

Vacated and remanded.

MARKEY, J., concurring in part and dissenting in part, agreed with the majority that the trial court abused its discretion by imposing an unjust and disproportionate discovery sanction and, therefore, the judgment for attendant-care services and attorney fees must be vacated and the case must be remanded for a new trial. Judge MARKEY disagreed, however, that agency rates are relevant to determining a reasonable charge for attendant-care services provided by family members under the no-fault insurance act. She would hold that evidence of rates agencies charge to provide caregivers is not admissible because the hourly rate necessary to operate a business to provide individual caregivers is not material to the question of a reasonable charge to compensate individual family members who provide attendant care to injured loved ones. She would also hold that the trial court erred by not granting Auto Club's motion in limine that sought to preclude plaintiff from introducing evidence of the amounts health-care agencies charge for providing home attendant care and by refusing

to instruct the jury as requested by Auto Club and would reverse the judgment of the trial court for those reasons as well. Allowable expenses are implicitly purchased by the injured person at their reasonable market value. The reasonable or market value of the attendant-care services plaintiff purchased from his parents is what they could receive by marketing similar services to unrelated purchasers when insurance is not involved. What payment plaintiff's parents could command on the open market would depend on their qualifications, training, experience, the demand for the service, and other factors. What an agency might charge to provide a caregiver of such services is not relevant because it does not accurately reflect what the individual caregiver would earn. Agency rates are not relevant to prove a reasonable charge for family-provided attendant-care services. To the extent that evidence regarding agency rates satisfies the "any tendency" standard for relevant evidence under MRE 401, it should be excluded because its probative value is substantially outweighed by the danger of confusion of the issues or misleading the jury.

1. PRETRIAL PROCEDURE — DISCOVERY — SANCTIONS.

A sanction imposed by a trial court for a discovery violation must be proportionate and just; a trial court's imposition of discovery sanctions is reviewed by the Court of Appeals for an abuse of discretion; an abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes.

2. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — ATTENDANT CARE — FAMILY-PROVIDED CARE — REASONABLE CHARGES.

The market rate for agency-provided attendant-care services bears relevance to establishing a rate for family-provided attendant-care services under the no-fault insurance act; although rates charged by an agency to provide attendant-care services are not dispositive of the reasonable rate chargeable by a relative caregiver, they supply one measure of the value of attendant care and are relevant to the determination of a reasonable charge for family-provided attendant-care services (MCL 500.3107[1][a]).

3. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — ALLOWABLE EXPENSES REASONABLE CHARGES.

The Legislature selected reasonableness as the operative criterion for determining the allowable expenses incurred for reasonably necessary products, services, and accommodations for the care, recovery, or rehabilitation of a person injured in a motor vehicle accident; to the extent that the market for a particular service bears on its reasonableness, the parameters of the relevant market

present jury questions; the relevant market for attendant-care services includes agency-provided services, family-provided services, and independently contracted care; the no-fault act does not confine a provider's reasonable charge to the amount the provider customarily receives from third-party payors; an objective standard guides an assessment of the term "reasonably necessary"; the question whether expenses are reasonable and reasonably necessary is generally one of fact for the jury and, in making this determination, the jury is entitled to consider evidence relevant to the reasonableness of the charge (MCL 500.3107[1][a]).

*Liss, Seder & Andrews, P.C.* (by *Nicholas S. Andrews* and *Arthur Y. Liss*), and *Larry A. Smith,* for William Hardrick.

*Hom, Killeen, Siefer, Arene & Hoehn* (by *Kevin S. Carden*) and *Gross & Nemeth, P.L.C.* (by *Mary T. Nemeth*), for Auto Club Insurance Association.

Before: GLEICHER, P.J., and SAWYER and MARKEY, JJ.

GLEICHER, P.J. In this no-fault insurance action, a jury found defendant Auto Club Insurance Association (ACIA) liable to plaintiff William Hardrick for family-provided attendant-care services at a rate of $28 an hour. The jury reached this judgment after a trial at which ACIA was barred from presenting any evidence.[1] We vacate that judgment and remand for a new trial as the lower court abused its discretion by imposing an unjust and disproportionate sanction against ACIA.

The parties vigorously contest the parameters of the evidence relevant on retrial to prove the reasonable rate for family-provided attendant-care services. ACIA contends that agency rates are irrelevant to establish the cost of family-provided care. We conclude that evidence

---

[1] These three appeals all arise out of the same lower-court action for no-fault benefits and have been consolidated to advance the efficient administration of the appellate process.

of agency rates constitutes a material and probative measure of the general value of attendant-care services, including care provided by family members.

## I. BACKGROUND FACTS AND PROCEEDINGS

In May 2007, a car struck Hardrick, then aged 19, as he walked home from work. Hardrick suffered a traumatic brain injury resulting in cognitive deficits and emotional instability. Extensive hospital-based rehabilitation yielded only minimal therapeutic gains. In 2008, Hardrick's psychiatrist recommended around-the-clock attendant care "for supervision and safety." Hardrick's parents provide the prescribed attendant care.

ACIA admitted responsibility for paying Hardrick's personal protection insurance (PIP) benefits, "consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). ACIA classified Hardrick's parents as "home health aides," and paid them a rate of $10.25 to $10.50 an hour for the attendant care they provided. Hardrick filed this lawsuit seeking a determination that his parents qualified as "behavioral technicians," entitling them to charge a higher hourly rate. Throughout the litigation, the parties disputed only the "reasonable charge" for Hardrick's parents' services. ACIA never contested the number of hours Hardrick's parents worked providing attendant care or its responsibility to pay PIP benefits.[2]

_____

[2] ACIA's counsel conceded in a pretrial motion that "The only issue for [t]rial is the amount of compensation for Plaintiff's family members who provide Plaintiff the needed 24 hour a day attendant care." At the hearing on Hardrick's motion for a default judgment, ACIA's counsel further conceded: "The only issue in this case is whether or not the attendant care rate being paid to the parents of this injured individual is

Before trial, the circuit court determined that ACIA had violated its discovery orders by providing belated and incomplete responses to discovery requests. Hardrick pursued a default judgment, but the court opted to impose a "lesser sanction." The court precluded ACIA from presenting any witnesses or evidence. As a result, ACIA was limited to cross-examining Hardrick's witnesses and challenging his proffered evidence.

At the trial, Hardrick presented the testimony of Robert Ancell, Ph.D., a vocational rehabilitation counselor and case manager. Ancell opined that Hardrick's psychiatrist ordered attendant-care services at a level consistent with the care provided by behavioral technicians. Ancell explained that within the attendant-care rubric, a "companion, like a baby sitter," fulfills the lowest level of responsibility. At the next level, nurse's aides, also known as home health aides, attend to "basic care needs" such as "[b]athing, feeding, dressing" and spending time with the brain-injured patient. Licensed practical nurses occupy the next rung of the responsibility ladder. "Somewhere comparable" to the licensed practical nurses, behavioral therapists "understand[] how to deal with behavior issues" by "cuing" and "structuring" behavior. According to Ancell, Hardrick's psychiatrist ordered supervision "by someone with [the] experience of a behavioral technician or life skills trainer, or someone who is very familiar to the patient who knows how to distract him, structure him, and set limits on him in a way that won't escalate his behaviors."

---

a fair rate. That's the only issue. There's no medical issues, there's no coverage issues, there's no issues of anything else." Given these concessions at the trial level, ACIA is precluded from complaining on appeal that Hardrick's parents did not actually serve the logged number of attendant-care hours.

Ancell testified that Hardrick's parents have fulfilled the supervisory duties described by their son's psychiatrist, and opined that the value of their care ranged between $25 and $45 an hour. Ancell derived this range from "the market place . . . as it relates to providing that kind of service to individuals and individuals who are clients of ours that receive those types of services[.]" During cross-examination, Ancell clarified that although the "value" of the care fell within the $25 to $45 range, a behavioral technician's hourly wage would be less. Ancell explained that his value calculation factored in benefits and other "government mandated inclusions" applicable to agencies and conceded that employment benefits constitute 30 percent of an agency employee's hourly rate. Ancell agreed that independent contractors receive no benefits, but noted that they pay social security taxes at a rate two times greater than agency employees.

The trial court limited the jury's reasonable-charge calculation to a range of $25 to $45 an hour, and the jury ultimately concluded that $28 an hour represented a reasonable charge for Hardrick's parents' attendant-care services. The trial court then ordered ACIA to pay Hardrick's attorney fees, pursuant to MCL 500.3148(1) of the no-fault act, at a rate of $500 an hour, finding that ACIA "unreasonably delayed in making proper payment."

## II. DISCOVERY VIOLATION

ACIA concedes "that it did not timely respond to Plaintiff's . . . interrogatories and requests for discovery" and that the trial court was justified in imposing a sanction. ACIA challenges only the court's choice of a sanction.

As a result of ACIA's failure to provide timely and complete discovery, Hardrick filed a motion for a default judgment. The trial court noted that a default judgment is a "drastic sanction" that "should be only used when there has been a flagrant and wanton refusal to facilitate discovery." The court further noted that it was required to consider "whether a lesser sanction would better serve the interest of justice." The court found that Hardrick had been severely prejudiced by ACIA's reticence because discovery had since closed, case evaluation was completed, and the time to file a motion for summary disposition had passed. Yet, the court found that ACIA was not "obfuscating and attempting to impair discovery in a malicious sense." The trial court then ruled, "I find in light of that that an appropriate *lesser sanction* is to not allow the defendant to produce any witnesses at all. And that is the Court's finding, that that lesser sanction is appropriate." (Emphasis added.)

Following the court's imposition of the sanction, the court twice adjourned the trial to accommodate the needs of Hardrick's counsel. As the date for the rescheduled trial approached, ACIA filed a motion for reconsideration, expressing its desire to introduce "expert witnesses regarding rate and level of care." By then, ACIA had supplied Hardrick with complete discovery and Hardrick had had a sufficient opportunity to review the information, thereby eliminating any possible prejudice. In the interim, however, the case had been reassigned to a visiting judge who declined to overrule the original judge's penalty imposed for ACIA's past conduct.

We review a trial court's imposition of discovery sanctions for an abuse of discretion. *Dorman v Clinton Twp*, 269 Mich App 638, 655; 714 NW2d 350 (2006). An

abuse of discretion occurs when the decision is outside
the range of principled outcomes. *Maldonado v Ford
Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).
The trial court sanctioned ACIA pursuant to MCR
2.313. "The interpretation and application of a court
rule involves a question of law that this Court reviews
de novo." *Johnson Family Ltd Partnership v White Pine
Wireless, LLC*, 281 Mich App 364, 387; 761 NW2d 353
(2008). This Court reviews any factual findings under-
lying a trial court's decision for clear error. MCR
2.613(C). "A finding is clearly erroneous when this
Court is left with a definite and firm conviction that a
mistake has been made." *Johnson*, 281 Mich App at
387.

MCR 2.313(B)(2) provides for the imposition of dis-
covery sanctions as follows:

> If a party or an officer, director, or managing agent of a
> party, or a person designated . . . to testify on behalf of a party,
> fails to obey an order to provide or permit discovery, . . . the
> court in which the action is pending may order such sanctions
> as are just, including, but not limited to the following:
>
> (a) an order that the matters regarding which the order
> was entered or other designated facts may be taken to be
> established for the purposes of the action in accordance
> with the claim of the party obtaining the order;
>
> (b) an order refusing to allow the disobedient party to
> support or oppose designated claims or defenses, or prohib-
> iting the party from introducing designated matters into
> evidence;
>
> (c) an order striking pleadings or parts of pleadings,
> staying further proceedings until the order is obeyed,
> dismissing the action or proceeding or a part of it, or
> rendering a judgment by default against the disobedient
> party;

*     *     *

> In lieu of or in addition to the foregoing orders, the court
> shall require the party failing to obey the order or the
> attorney advising the party, or both, to pay the reasonable
> expenses, including attorney fees, caused by the failure,
> unless the court finds that the failure was substantially
> justified or that other circumstances make an award of
> expenses unjust.

It is readily apparent that the trial court abused its discretion by selecting the sanction imposed. The court specifically concluded that ACIA's conduct did not merit the drastic sanction of a default judgment. Even though the court labeled its order as "a lesser sanction," the court actually imposed a sanction more severe and limiting than a default judgment would have been. Had the court granted Hardrick's request for a default judgment, ACIA would have been permitted to present evidence to prove the extent of Hardrick's damages. *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 578; 321 NW2d 653 (1982), mod on other grounds by *Smith v Khouri*, 481 Mich 519 (2008) (while "a default settles the question of liability as to well-pleaded allegations and precludes the defaulting party from litigating that issue," it is not an admission of damages); *Dollar Rent-A-Car Sys v Nodel Constr*, 172 Mich App 738, 743; 432 NW2d 423 (1988) (a default "operates as an admission by the defaulting party of issues of liability, but leaves the issues of damages" to be resolved at a hearing at which the defaulting party has "full participatory rights"). The court's actual sanction went further and precluded ACIA from presenting any evidence, even on the damages issue.

A court may impose the severe sanction of a default judgment "only when a party flagrantly and wantonly refuses to facilitate discovery, not when the failure to comply with a discovery request is accidental or involuntary." *Bass v Combs*, 238 Mich App 16, 26; 604 NW2d

727 (1999), overruled in part on other grounds *Dimmitt & Owens Fin, Inc v Deloitte & Touche (ISC), LLC*, 481 Mich 618, 628 (2008); *Mink v Masters*, 204 Mich App 242, 244; 514 NW2d 235 (1994).

> Before imposing the sanction of a default judgment, a trial court should consider whether the failure to respond to discovery requests extends over a substantial period of time, whether an existing discovery order was violated, the amount of time that has elapsed between the violation and the motion for a default judgment, the prejudice to defendant, and whether wilfulness has been shown. [*Thorne v Bell*, 206 Mich App 625, 632-633; 522 NW2d 711 (1994).]

Ultimately, the court's chosen discovery sanction must "be proportionate and just . . . ." *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 87; 618 NW2d 66 (2000).

The trial court correctly determined that ACIA had violated the court's discovery order by providing belated and incomplete discovery. ACIA's failure to adequately respond to discovery requests extended over several months, even after an order to compel was entered. The court also correctly concluded that ACIA's discovery violation was not flagrant and wanton, but more likely negligent. Given the lack of flagrant and wanton conduct on ACIA's part, the court properly determined that a default judgment would be too severe a sanction.

Yet, as noted, the trial court found that Hardrick had suffered severe prejudice. At that point, the date originally set for trial was drawing nigh and the court was concerned that ACIA's delay amounted to a "trial by ambush." The court expressed further concern over the effect of ACIA's delay on the court's docket: "The alternative would be for this Court to basically re-start and re-gear up the scheduling order which would include significantly expanding the time that the Court

would have to dedicate to this case, re-opening discovery, case evaluation, motions for summary disposition. That is completely inappropriate."

The trial court clearly erred by concluding that ACIA's discovery violations severely prejudiced Hardrick. Hardrick controlled the necessary information regarding his treatment, progress, and the attendant-care services provided by his parents. Hardrick bore the burden of proof on the reasonable value of the attendant-care services and could investigate the issue without assistance from ACIA. Hardrick was also fully aware of ACIA's defense theory given that ACIA had compensated his parents at "health aide" rates. He easily could have accessed the United States Department of Labor's statistics on which ACIA based its payment schedule. Moreover, at the time of the discovery-violation hearing, the parties had agreed to proceed with witness depositions despite the expiration of the discovery period. Thus, the court and Hardrick were aware that Hardrick would discover additional information regarding ACIA's defense before trial. The court could have allayed its concern that ACIA was attempting to conduct a trial by ambush by precluding ACIA's presentation of any undisclosed witnesses or evidence. And the proper remedy for the inconvenience caused to the court's docket would be to hold ACIA in contempt of court. MCR 2.313(B)(2)(d); *Johnson*, 281 Mich App at 387. Moreover, the trial was adjourned for nearly six months following the imposition of the sanction and by no fault of ACIA. This additional time more than amply allowed continued discovery, which did, in fact, occur. The extended trial-preparation period certainly reduced the prejudice caused by ACIA's earlier discovery violation and supported ACIA's subsequent request to modify the existing sanction.

In the end, the trial court's error cost ACIA the
opportunity to present any evidence regarding the
reasonable rate of service, an element of damages.
Because the sanction was disproportionate and affected
the entirety of the trial, we vacate the jury's judgment
in Hardrick's favor and remand for a new trial.[3] On
remand, the court may find a lesser degree of prejudice
caused to Hardrick and may impose some sanction on
ACIA for its violation of discovery orders. However, the
court should carefully consider what sanctions are
"just" under the circumstances. See MCR 2.313(B)(2).

### III. FAMILY-PROVIDED ATTENDANT CARE

By remanding this case for a new trial, we have
reopened the parties' debate regarding the valuation of
family-provided       attendant-care      services.      MCL
500.3107(1)(a) provides for the payment of "[a]llowable
expenses," "consisting of all reasonable charges in-
curred for reasonably necessary products, services and
accommodations for an injured person's care, recovery,
or rehabilitation." ACIA contends that the rates
charged by health-care agencies for attendant-care ser-
vices are irrelevant to establish the reasonable rate for
unlicensed, family-provided services. ACIA argues that
the rate for family-provided attendant care must be
based on what a similarly skilled care provider doing
the same work could earn if employed performing that
work for an unrelated employer. According to ACIA, the
pertinent rate for determining the value of the family-

---

[3] The trial court granted a partial directed verdict in Hardrick's favor,
requiring the jury to determine a value for attendant-care services between
$25 and $45 an hour. The court's decision was based on the lack of evidence
contradicting Hardrick's expert witness's valuation of such services. Be-
cause ACIA will be able to present evidence regarding damages on remand,
including the reasonableness of the rate, we need not consider the propriety
of the court's order granting a partial directed verdict.

provided attendant care is a similar worker's wage, not the hourly fees that a health-care agency might charge to provide such services because that charge would include operating expenses as well as wages. To that end, ACIA filed a motion in limine to preclude Hardrick's evidence in this regard or, in the alternative, requested special jury instructions to limit the use of the evidence. We hold that the market rate for agency-provided attendant-care services bears relevance to establishing a rate for family-provided services.

### A. RELEVANCY

ACIA relies extensively on *Bonkowski v Allstate Ins Co*, 281 Mich App 154; 761 NW2d 784 (2008), for the proposition that evidence of agency rates for attendant-care services "is irrelevant" to establish the rate for family-provided care. However, *Bonkowski* expressly acknowledged that its analysis of this issue was pure dicta:

> This case touches on an interesting question of law and statutory interpretation: whether, when determining reasonable compensation payable under MCL 500.3107(1)(a) to lay providers of attendant care services, a jury may rely on the rates charged by health care agencies that employ licensed health care professionals who provide attendant care services. We use the words "touches on" intentionally, as this issue is not squarely before us in this appeal.

> This Court has previously embraced the notion that "comparison to rates charged by institutions provides a valid method for determining whether the amount of an expense was reasonable and for placing a value on comparable services performed [by family members]." *Manley v Detroit Automobile Inter-Ins Exch*, 127 Mich App 444, 455; 339 NW2d 205 (1983). We question the conclusion reached in *Manley*.

\* \* \*

Notwithstanding our questioning of *Manley*, defendant did not argue in the trial court or on appeal in this Court that *Manley* was wrongly decided. Rather, the lower court record reflects that defendant only argued before the trial court that, under MCL 500.3107, Andrew's expenses had not been "incurred." The question whether attendant care services were "incurred" is distinct from the question whether the amount paid for attendant care services was reasonable. [*Bonkowski*, 281 Mich App at 164-165 (citation omitted).]

We are, therefore, in no way bound to follow *Bonkowski*. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 436-437; 751 NW2d 8 (2008).

In any event, we disagree with *Bonkowski*'s suggestion that agency rates are irrelevant to establish family-care rates, to wit:

In determining reasonable compensation for an unlicensed person who provides health care services, a factfinder may consider the compensation paid to licensed health care professionals who provide similar services. . . . For this reason, consideration of the compensation paid by health care agencies to their licensed health care employees for rendering services similar to the services provided by unlicensed family members is appropriate when determining reasonable compensation for those family members. However, the actual charges assessed by health care agencies in the business of providing such services is not relevant and provides no assistance in determining reasonable compensation for the actual provider of such services. The focus should be on the compensation provided to the person providing the services, not the charge assessed by an agency that hires health care professionals to provide such services. [*Bonkowski*, 281 Mich App at 164-165.]

We agree that the rates charged by an agency to provide attendant-care services are not dispositive of the reasonable rate chargeable by a relative caregiver. However, this does not detract from the relevance of such evidence.

Relevant evidence is evidence "having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401 (emphasis added). Relevance divides into two components: materiality and probative value. *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998). Material evidence relates to a fact of consequence to the action. *People v Sabin (After Remand)*, 463 Mich 43, 57; 614 NW2d 888 (2000). " '[A] material fact "need not be an element of a crime or cause of action or defense but it must, at least, be 'in issue' in the sense that it is within the range of litigated matters in controversy." ' " *People v Brooks*, 453 Mich 511, 518; 557 NW2d 106 (1996), quoting *People v Mills*, 450 Mich 61, 68; 537 NW2d 909 (1995), quoting *United States v Dunn*, 805 F2d 1275, 1281 (CA 6, 1986). Materiality "looks to the relation between the propositions that the evidence is offered to prove and the issues in the case. If the evidence is offered to help prove a proposition that is not a matter in issue, the evidence is immaterial." 1 McCormick, Evidence (6th ed), § 185, p 729. Here, the material fact at issue concerns a reasonable charge for Hardrick's attendant-care services. No-fault insurers routinely pay agency rates for attendant-care services. As Ancell explained, the rates charged vary according to the level of care provided. Thus, the rate charged by an agency for the care provided by a "behavioral technician" relates to a consequential fact, the reasonableness of Hardrick's claimed charge for his parents' "behavioral technician" services, and thus falls within the range of litigated matters in controversy.[4]

---

[4] In *People v VanderVliet*, 444 Mich 52, 60 n 8; 508 NW2d 114 (1993), our Supreme Court quoted approvingly from a treatise authored by Professor Edward Imwinkelried, as follows:

To be relevant, evidence must tend " 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Crawford*, 458 Mich at 389-390. Our Supreme Court emphasized in *Crawford*, 458 Mich at 390, "The threshold is minimal: 'any' tendency is sufficient probative force." Evidence is relevant if it "in some degree advances the inquiry," McCormick, § 185, p 736, and is not objectionable simply because it fails to supply conclusive proof. "No single item of evidence can be rejected upon the sole ground that it falls short of making a case; if it contributes to that end it must be received, and its sufficiency in connection with the other evidence must be determined on a review of the whole when the case is closed." *Collins v Beecher*, 45 Mich 436, 438; 8 NW 97 (1881). Our Supreme Court highlighted this concept in *Brooks* by quoting extensively from McCormick's treatise on evidence:

> "Under our system, molded by the tradition of jury trial and predominantly oral proof, a party offers his evidence not *en masse*, but item by item. An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered. It need not ever make that proposition appear more probable than not. Whether the entire body of one party's evidence is sufficient to go to the jury is one question. Whether a particular item of evidence is relevant to his case is quite another. It is enough if the item could reasonably show that a fact is slightly more probable than it would appear

---

"This is the normal test for materiality: Does the item of evidence even slightly increase or decrease the probability of the existence of any material fact in issue? Standing alone, the item of evidence need not have sufficient probative value to support a finding that the fact exists. So long as the item of evidence affects the balance of probabilities to any degree, the item is logically relevant." [Citation omitted.]

without that evidence. Even after the probative force of the evidence is spent, the proposition for which it is offered still can seem quite improbable. Thus, the common objection that the inference for which the fact is offered 'does not necessarily follow' is untenable. It poses a standard of conclusiveness that very few single items of circumstantial evidence ever could meet. A brick is not a wall." [*Brooks*, 453 Mich at 519, quoting 1 McCormick, Evidence (4th ed), § 185, p 776.]

Here, the question presented is not whether an agency rate is reasonable per se under the circumstances, but whether evidence of an agency rate may assist a jury in determining a reasonable charge for family-provided attendant-care services. The fact that an agency charges a certain rate for precisely the same services that Hardrick's parents provide does not *prove* that the rate should apply to the parents' services. However, an agency rate for attendant-care services, routinely paid by a no-fault carrier, is a piece of evidence that throws some light, however faint, on the reasonableness of a charge for attendant-care services. See *Beaubien v Cicotte*, 12 Mich 459, 484 (1864). In other words, an agency rate supplies one measure of the value of attendant care and is worthy of a jury's consideration. A jury may ultimately decide that an agency rate carries less weight than the rate charged by an independent contractor, or no weight at all. But the fact that different charges for the same service exist in the marketplace hardly renders one charge irrelevant as a matter of law. Ultimately, the challenged evidence is relevant and the trial court properly rejected ACIA's attempt to exclude it.[5]

---

[5] The relevancy of agency rates in determining a reasonable rate for home care has long been implied in Michigan jurisprudence. See *Reed v Citizens Ins Co of America*, 198 Mich App 443, 453; 499 NW2d 22 (1993) ("The reasonableness of the expenses incurred may be judged by comparison with rates charged by institutions."), overruled by *Griffith v*

### B. REASONABLE CHARGES IN THE MARKETPLACE

The dissent argues that "market rates" should dictate a " 'reasonable charge' for no-fault services . . . ." *Post* at 692. According to the dissent, "a reasonable charge for attendant-care services provided by a family member is determined by what the family member could receive in the open market for providing similar services." *Post* at 692. The dissent reasons that the "relevant market" includes "what an individual care provider would be paid" or "what a health-care agency might pay an 'independent contractor' to provide similar services." *Post* at 692. After confining a "reasonable charge" to the wage that might be earned by a family member "in the open market," the dissent contends that agency rates lack relevance to market rates. *Post* at 692 (emphasis added).

Neither the no-fault act nor this state's vast body of no-fault caselaw mentions the term "relevant market." It commonly appears, however, in antitrust cases. A claimant seeking to prove the existence of a monopoly must establish the relevant market. *Attorney General, ex rel State Banking Comm'r v Michigan Nat'l Bank*, 377 Mich 481, 489; 141 NW2d 73 (1966). The Michigan Antitrust Reform Act, MCL 445.771 *et seq.*, defines the "relevant market" as "the geographical area of actual or

*State Farm Mut Auto Ins Co*, 472 Mich 521, 540; 697 NW2d 895 (2005) (overruling the proposition that "room and board" and food provided during home care are allowable expenses); *Manley*, 127 Mich App at 455 ("[C]omparison to rates charged by institutions provides a valid method for determining whether the amount of an expense was reasonable . . . ."), rev'd 425 Mich 140 (1986) (omitting any analysis or comment on the statement relevant here); *Dunaj v Harry Becker Co*, 52 Mich App 354, 358-359; 217 NW2d 397 (1974) (holding in a workers' compensation case "that medical services provided by a claimant's wife are compensable to the same extent as they would be if the services had been rendered by someone other than the wife").

potential competition in a line of trade or commerce, all or any part of which is within this state." MCL 445.771(b). The United States Court of Appeals for the Sixth Circuit has described the test for ascertaining a relevant market as involving "the identification of those products or services that are either (1) identical to or (2) available substitutes for the defendant's product or service." *White & White, Inc v American Hosp Supply Corp*, 723 F2d 495, 500 (CA 6, 1983).[6]

A relevant market includes a cluster of services or products rather than a lone offering. "Relevant markets are generally not limited to a single manufacturer's products, but are composed of products that have reasonable interchangeability--*i.e.*, gasoline rather than ExxonMobil-branded gasoline." *Partner & Partner, Inc v ExxonMobil Oil Corp*, 326 Fed Appx 892, 899 (CA 6, 2009).

> [D]efining a relevant product market is a process of describing those groups of producers which, because of the similarity of their products, have the ability -- actual or potential -- to take significant amounts of business away from each other. A market definition must look at all relevant sources of supply, either actual rivals or eager potential entrants to the market. [*SmithKline Corp v Eli Lilly & Co*, 575 F2d 1056, 1063 (CA 3, 1978).]

Under federal law, determining the parameters of the relevant market presents questions of fact. *White & White*, 723 F2d at 499-500.

The Legislature selected "reasonableness" as the operative criterion for determining the amount of a charge for services. MCL 500.3107(1)(a). To the extent that the market for a particular service bears on its

---

[6] Michigan's antitrust laws are patterned after federal statutes. *ETT Ambulance Serv Corp v Rockford Ambulance, Inc*, 204 Mich App 392, 397; 516 NW2d 498 (1994).

reasonableness, the parameters of the relevant market present jury questions. Consumers of attendant-care services may select among a variety of providers, including themselves. Viewed through the antitrust-law lens, the relevant market for attendant-care services includes agency-provided services, family-provided services, and independently contracted care. We find implausible the notion that a "relevant market" may exclude real-life competitors for precisely the same services. A true "market approach" considers the actual marketplace rather than an artificial construct restricted to but one choice.

Further, the dissent's wage-based approach to defining a "reasonable charge" cannot be reconciled with the language of the no-fault act. According to the dissent, "a reasonable charge for any attendant-care services plaintiff's parents provide is the equivalent of what compensation they could command on the open market for providing similar services to unrelated persons. This, in turn, would depend on their qualifications, training, experience, and what persons providing similar services could earn." *Post* at 692. Thus, the dissent limits a "reasonable charge" for attendant-care services supplied by family members to "what the family member could receive in the open market for providing similar services." *Post* at 692. This definition conflates an employee's wage with a provider's reasonable charge.

The governing statutory language provides that a no-fault insurer must pay "[a]llowable expenses consisting of all reasonable *charges* incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a) (emphasis added). To charge is " '[t]o demand a fee; to bill.' " *Holland v Trinity Health Care Corp*, 287 Mich App 524, 528; 791 NW2d 724

(2010), quoting Black's Law Dictionary (8th ed). As a noun, the word "charge" means "[t]he price set or asked for something." *The American Heritage Dictionary* (2d college ed, 1982). MCL 421.44(2) defines "wages" as "remuneration paid by employers for employment[.]" A worker's wage contributes to the charge for a service, but the two are simply not equivalent. Real life examples readily distinguish the two concepts. If one orders a pizza for delivery, a delivery charge may attach. The delivery charge and the pizza deliverer's wage are highly unlikely to correspond. Alternatively, one may hire a car service to provide transportation to an airport. The charge for the service will certainly exceed the wage paid to the driver.

Another legal analogy illustrates the fundamental distinction between wages and reasonable charges. Attorney fee statutes such as 42 USC 1988 authorize courts to award a "reasonable attorney's fee" to prevailing litigants. Reasonable fees, equivalent to reasonable charges, are generally "calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v Stenson*, 465 US 886, 895; 104 S Ct 1541; 79 L Ed 2d 891 (1984).

> In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to -- for convenience -- as the prevailing market rate. [*Id.* at 895 n 11.]

In *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), our Supreme Court considered the method for determining a "reasonable attorney fee" under the case evaluation rule, MCR 2.403(O)(6). The Supreme Court specifically rejected the notion that a reasonable attorney fee equated with an attorney's actual wage, explaining that the court rule

> only permits an award of a reasonable fee, i.e., a fee similar to that customarily charged in the locality for similar legal services, which, of course, may differ from the actual fee charged or the highest rate the attorney might otherwise command. As *Coulter v Tennessee*, 805 F2d 146, 148 (CA 6, 1986), explains, reasonable fees "are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region." [*Smith*, 481 Mich at 528 (opinion by TAYLOR, C.J.) (emphasis omitted).]

Instead, several factors determine a reasonable attorney fee, including " 'the fee customarily charged in the locality for similar legal services' " and the number of attorney hours expended in the litigation. *Id.* at 530 (citation omitted). The "relevant market" for this inquiry encompasses the locality in which the case was litigated. *Id.* The Supreme Court took pains to emphasize that "[t]he fees customarily charged in the locality for similar legal services" should be the measure, rather than the fee charged by an area's top lawyers. *Id.* at 531.

In the no-fault realm, this Court has repeatedly rebuffed efforts by both providers and insurers to circumscribe a fact-finder's reasonable-charge determination. In *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 113; 535 NW2d 529 (1995), this Court rejected the argument that the "customary fee" obtained by a provider for patients insured by Blue Cross and Blue Shield of Michigan (BCBSM) defined the "reasonable charge" for the service, reasoning:

ACIA's reasoning is premised on the principle that BCB-
SM's "payments" to plaintiffs for x-rays, as opposed to plain-
tiffs' "charges" to BCBSM for those x-rays, are the proper
criteria to be used in determining the plaintiffs' "customary
charge" for x-rays. This position is untenable, however, in
light of the clear statutory language of [MCL 500.3157],
which states that a "charge" in a no-fault case "shall not
exceed the amount [a] person or institution customarily
*charges* for like products, services and accommodations in
cases not involving insurance" (emphasis added). Thus,
ACIA's reliance on the amount that was "paid" by BCBSM,
as opposed to the amount that plaintiffs "charged," is unwar-
ranted.

In *Mercy Mt Clemens Corp v Auto Club Ins Ass'n*, 219
Mich App 46, 54-55; 555 NW2d 871 (1996), this Court
extended *Hofmann* by holding that the amount paid by
Medicare, Medicaid, workers' compensation insurers,
and BCBSM "is not admissible to prove the customary
charge that defendant must pay under [MCL
500.3157]." These precedents instruct that the no-fault
act does not confine a provider's reasonable charge to
the amount the provider customarily *receives* from
third-party payors.

### C. OTHER RELEVANT EVIDENCE

Given that many factors influence the determination
of a "reasonable charge" for attendant-care services, a
jury may consider a provider's wage as one piece of
evidence relevant to this calculation. We view the rea-
sonableness inquiry as encompassing any evidence
bearing on fair compensation for the particular services
rendered. The principles supporting the relevancy of
agency rates equally support the relevancy of other
evidence. For example, Ancell testified that an agency
would pay its employees less than the $25 to $45 hourly
rate charged to the patient. Evidence of the employee's

hourly wage throws some light, however faint on the reasonableness of a charge for attendant-care services. *Beaubien*, 12 Mich at 484. ACIA correctly notes that the jury should hear such evidence to more fully and accurately calculate a reasonable rate for the services rendered.

Similarly, evidence of the "overhead" incurred (or not incurred) by Hardrick's parents would be relevant to calculating a reasonable charge. In this regard, we find instructive *Sharp v Preferred Risk Mut Ins Co*, 142 Mich App 499; 370 NW2d 619 (1985). In *Sharp*, this Court acknowledged that a family's provision of attendant care can include more than time for care services rendered. Sharp's mother personally hired and coordinated the home-nursing staff, and managed the business side of Sharp's care. This Court determined that the cost of such "overhead" was properly considered in calculating a reasonable rate for the caregiver's services. *Id.* at 513-515.

A parent who personally provides attendant-care services also certainly bears an "opportunity cost." "The term 'opportunity cost,' which is borrowed from the field of economics, refers to the amount that is sacrificed when choosing one activity over the next best alternative." *Mira v Nuclear Measurements Corp*, 107 F3d 466, 472 (CA 7, 1997) (citation and some quotation marks omitted). "[T]he opportunity one gives up by engaging in some activity is the cost of that activity . . . ." *Chronister Oil Co v Unocal Refining & Mktg*, 34 F3d 462, 465 (CA 7, 1994). Limiting a family member's "reasonable charge" to a wage ignores these other costs. In the end, the Legislature commanded that no-fault insurers pay a "reasonable charge" for attendant-care services, thereby consigning to a jury the necessary economic-value choices.

This analysis is consistent with *Sokolek v Gen Motors Corp*, 450 Mich 133; 538 NW2d 369 (1995). *Sokolek* is a workers' compensation case in which the parties disputed the reasonable rate for a relative who provided "other attendance" recognized under MCL 418.315(1) of the workers' compensation act. The *Sokolek* Court determined that the issue should be left to the trier of fact, noting that "[m]any considerations may be necessary to make such a determination." *Sokolek*, 450 Mich at 145 (opinion by BRICKLEY, C.J., and LEVIN, J.). As noted in *Sokolek*:

> The defendant argues that there is no reason why the plaintiff's wife should receive the extra money that an agency charges to address administrative costs. Although we agree that this argument is logically compelling, we hold that what level of compensation is reasonable is a factual determination for the magistrate to decide.

> \* \* \*

> [T]he magistrate is in a better position than an appellate court to make this determination. The record before us on appeal is limited, and it is difficult for us to know whether it would be appropriate to award at least part of the extra expense required to hire a home companion from a nursing agency. Many considerations may be necessary to make such a determination.

> For example, the cost of minimal benefits and social security contributions may be included in the higher hourly rate paid to a nursing agency, and it may be necessary to provide similar benefits to an independent companion, over and above a standard salary. Nursing agencies may also pay to provide training to their employees above and beyond the abilities of an independent companion, training that may be necessary to care for the plaintiff. *In short, this is a multifaceted factual issue, involving the various types of in-home care available, the duties performed by them, their customary billing and*

*payment practices, and the type of services being performed
by the plaintiff's wife. [Id. at 145-146 (emphasis added).]*

None of the evidence proffered by ACIA or Hardrick,
or even mentioned by this Court, is *dispositive* of the
reasonable-charge issue. Rather, the evidence provides
a collage of factors affecting the reasonable rate that
may be charged by Hardrick's parents for the services
they provide.

### D. RELEVANCY PRINCIPLES APPLIED

The no-fault act entitles providers of attendant care
to impose a "reasonable charge" for their services. The
reasonable-charge provision applies to family members,
agencies, and independent contractors. In a recent case
construing MCL 500.3107(1)(a), our Supreme Court set
forth several definitions of the term "reasonable," in-
cluding "that which is 'agreeable to or in accord with
reason; logical,' or 'not exceeding the limit prescribed
by reason; not excessive,' " and " 'fair, proper, or mod-
erate under the circumstances' and '[f]it and appropri-
ate to the end in view.' " *Krohn v Home-Owners Ins Co*,
490 Mich 145, 159; 802 NW2d 281 (2011) (citations
omitted). These definitions of the term "reasonable"
demonstrate "an absence of the personal sentiment,
prejudice, and bias associated with a subjective point of
view . . . ." *Id.* A subjective view is " 'based on an
individual's perceptions, feelings, or intentions' rather
than the 'externally verifiable phenomena' associated
with an objective viewpoint." *Id.* (citations omitted). In
*Krohn*, the Supreme Court held that an objective stan-
dard guides an assessment of the term " 'reasonably
necessary.' " *Id.* at 163. We discern no basis for applying
a different standard to the term "reasonable charge."

"[T]he question whether expenses are reasonable
and reasonably necessary is generally one of fact for the

jury . . . ." *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 55; 457 NW2d 637 (1990). In making this determination, a jury is entitled to consider evidence relevant to the reasonableness of the charge. MRE 401 defines relevant evidence in expansive terms. As Justice COOLEY explained in *Stewart v People*, 23 Mich 63, 75 (1871): "The proper test for the admissibility of evidence ought to be . . . whether it has a tendency to affect belief in the mind of a reasonably cautious person, who should receive and weigh it with judicial fairness." The amount charged for attendant-care services substantially similar to the services provided by Hardrick's parents affords a logical basis for calculating a "reasonable charge." The charges made by others for the same services provided by Hardrick's parents may incorporate fees and costs not present within the Hardrick household, but as with any evidence, these shortcomings affect the weight of the evidence rather than its admissibility.[7]

### E. JURY INSTRUCTIONS

As noted, ACIA requested special jury instructions designed to limit or direct the jury's consideration of the factors relevant to establishing a "reasonable charge" for services. We review de novo the trial court's rejection of ACIA's requested special jury instructions. *Heaton v Benton Constr Co*, 286 Mich App 528, 537; 780

---

[7] We respectfully disagree with the dissent's contention that evidence establishing only the "outer boundaries" of an issue "is not helpful to prove the fact at issue." *Post* at 695. Usually, no single piece of evidence proves a case. Individual pieces of evidence, like bricks, join together to form a wall of proof. An agency rate may represent the "outer boundary" of a reasonable charge for attendant-care services, but along with other evidence including rates charged by independent contractors, a litigant may elect to incorporate evidence of agency rates in a wall of proof supporting the reasonableness of the rate claimed.

NW2d 618 (2009). Instructional error warrants reversal when it affects the outcome of the trial. MCR 2.613(A); *Jimkoski v Shupe*, 282 Mich App 1, 9; 763 NW2d 1 (2008).

ACIA presented two alternative jury instructions to guide the jury's consideration. Proposed Alternative A instructed the jury that "[a]mounts charged by health care agencies cannot be considered in determining reasonable compensation." The trial court properly rejected that instruction because it would have precluded the jury's consideration of relevant evidence.

ACIA's proposed Alternative B, on the other hand, recognizes the multifaceted nature of the required calculation:

> Plaintiff can recover benefits for care provided by member[s] of Plaintiff's family at its reasonable market value. In determining the reasonable market value of such care, you are to consider:
>
> (1) the type and amount of care Plaintiff reasonably needed;
>
> (2) the various types of in-home care available from outside care providers;
>
> (3) the duties performed by outside care providers;
>
> (4) the customary billing and payment practices of outside care providers; and
>
> (5) the type and amount of services being performed by the member[s] of Plaintiff's family.
>
> There is evidence that rates charged by home care agencies are higher than the amounts paid to the employees who actually render care. The difference between the rates charged by agencies and the amounts paid to its employees include agency overhead, such as social security contributions, malpractice insurance, health insurance, disability insurance, office clerical staff, rent, legal fees, accounting costs and office supplies, in addition to profit for the agency. In determining the amount owed for care

rendered by member[s] of Plaintiff's family, you are to consider whether any additional amounts charged by home care agencies are also necessary for the family member to provide care to Plaintiff.

Alternative B accurately reflects that many factors are relevant to the reasonable-rate issue. Alternative B is consistent with *Sokolek*'s analysis of a reasonable rate for home-provided care in the workers' compensation realm. See *Sokolek*, 450 Mich at 145-146 (opinion by BRICKLEY, C.J., and LEVIN, J.). It is consistent with *Sharp*'s recognition that even family-provided care may include "overhead" costs. *Sharp*, 142 Mich App at 513-515. And the proposed instruction allows the jury to consider a broad spectrum of relevant evidence. We therefore conclude that the trial court should have presented this proposed instruction to adequately and accurately inform the jury.

Whether the charge sought by Hardrick's parents qualifies as " 'fair, proper, or moderate under the circumstances' " and " '[f]it and appropriate to the end in view,' " *Krohn*, 490 Mich at 159 (citations omitted), will be more fully and clearly assessed based on evidence corresponding to this jury instruction. The jury must weigh agency charges against the charges made by other providers of the same or similar services to determine a reasonable fee. Because ACIA will be able to present such evidence on retrial, the jury will be able to calculate a reasonable charge for Hardrick's parents' services under the circumstances.[8]

Accordingly, we vacate the judgment against ACIA and remand for a new trial consistent with this opinion.

---

[8] ACIA also challenges the court's award of no-fault penalty interest for unreasonably delaying payment after proof of loss was presented. Because this issue may be eliminated on retrial, we decline to comment on the propriety of the award.

Neither party may tax costs pursuant to MCR 7.219 as neither party prevailed in full. We do not retain jurisdiction.

SAWYER, J., concurred with GLEICHER, P.J.

MARKEY, J. (*concurring in part and dissenting in part*). I agree with the majority that the trial court abused its discretion by imposing an unjust and disproportionate discovery sanction and that, therefore, the judgment for attendant care and attorney fees must be vacated and this case remanded for a new trial. I respectfully disagree, however, that agency rates are relevant to determining a reasonable charge for attendant care provided by family members under the no-fault insurance act. MCL 500.3107(1)(a). I find persuasive the discussion on this issue in *Bonkowski v Allstate Ins Co*, 281 Mich App 154, 164-165; 761 NW2d 784 (2008). I would hold inadmissible evidence of rates agencies charge to provide caregivers; the hourly rate necessary to operate a business to provide individual-care givers is not material to the question of a reasonable charge to compensate individual family members who provide attendant care to injured loved ones. The jury should be instructed consistent with this ruling.

In Docket No. 294875, defendant Auto Club Insurance Association (defendant or ACIA), appeals by right the judgment entered in plaintiff's favor for attendant care as an allowable expense under the no-fault act, MCL 500.3107(1)(a). In Docket Nos. 298661 and 299070, defendant appeals the trial court's order for attorney fees under MCL 500.3148(1).

Plaintiff suffered a traumatic brain injury after being struck by an automobile while walking home from his job. Plaintiff asserted that although his parents were

not licensed or formally trained caregivers, other than receiving direction from plaintiff's treating doctors, they should be compensated $25 to $45 an hour—what agencies would charge to provide high-skilled caregivers capable of handling plaintiff's emotional problems. At trial, because of a discovery sanction, defendant was not permitted to present any witnesses or any affirmative evidence. Plaintiff's parents, the caregivers, did not testify, and defendant's cross-examination was limited to the scope of the direct testimony elicited by plaintiff. At the close of plaintiff's evidence, plaintiff moved for a directed verdict on the issues that (1) the claimed attendant-care expenses had been incurred, and (2) absent contrary evidence, the value of the attendant care was no lower than $25 and no higher than $45 an hour. The trial court granted plaintiff's motion and so instructed the jury, which returned a verdict for plaintiff that a reasonable charge for attendant care was $28 an hour. Together with penalty interest under MCL 500.3142(3), the resulting judgment was entered for $333,354.01, even though ACIA had already paid plaintiff's parents $10.25 or $10.50 an hour for all hours of care claimed.

In Docket Nos. 298661 and 299070, defendant appeals the trial court's order for attorney fees under MCL 500.3148(1), asserting bona fide factual issues existed regarding the reasonable level of attendant care plaintiff required and the reasonable rate that plaintiff's parents could charge for it. Alternatively, defendant argues that the trial court assessed an unreasonably high attorney fee.

## I. FAMILY-PROVIDED ATTENDANT CARE

Before trial, defendant filed with the court requests for jury instructions based on *Sokolek v Gen Motors*

*Corp*, 450 Mich 133, 144-145; 538 NW2d 369 (1995),
and *Bonkowski*, 281 Mich App 154. The essence of the
requested instructions was that the market rate for
family-provided attendant care must be based on what
a similarly skilled care provider doing the same work
could earn if employed by an unrelated employer. In
other words, the pertinent market rate for determining
the value of the family-provided care is a similar work-
er's wage, not the hourly fees that a health-care agency
would charge to provide a health-care worker that
includes the agency's operating expenses in addition to
what the agency would pay the caregiver.

Defendant also filed a motion in limine seeking to
preclude plaintiff from introducing evidence of amounts
health-care agencies charge for providing home atten-
dant care. On the basis of *Sokolek* and *Bonkowski*,
defendant argued that rates health-care agencies
charge are irrelevant in determining compensation for
unlicensed family members who provide attendant care.
Defendant argued that the only relevant evidence is
evidence regarding what such agencies would pay to
their health-care employees to provide services similar
to what the family member provided. Plaintiff argued
that the discussion in *Bonkowski* on this issue is non-
binding dicta, and that *Manley v Detroit Auto Inter-Ins
Exch*, 127 Mich App 444; 339 NW2d 205 (1983), rev'd
and remanded 425 Mich 140 (1986), provides the con-
trolling rule of law. In *Manley*, the Court opined that
"comparison to rates charged by institutions provides a
valid method for determining whether the amount of an
expense was reasonable and for placing a value on
comparable services performed by" family members.
*Manley*, 127 Mich App at 455. The trial court denied the
motion and also denied defendant's request for supple-
mental jury instructions.

Thus, defendant presents the fundamental question: what relevance do agency rates have in determining reasonable compensation for nonlicensed family-provided attendant care?

### A. STANDARD OF REVIEW

A trial court's decision to admit or exclude evidence is reviewed on appeal for an abuse of discretion. *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004). A trial court abuses its discretion when its decision results in an outcome falling outside the range of principled outcomes. *Barnett v Hidalgo*, 478 Mich 151, 158; 732 NW2d 472 (2007). But questions of law underlying a trial court's evidentiary decision, such as the application of a constitutional provision, statute, court rule, or rule of evidence, are reviewed de novo. *Id.* at 159; *Waknin v Chamberlain*, 467 Mich 329, 332; 653 NW2d 176 (2002).

Allegations of instructional error are reviewed de novo. *Heaton v Benton Constr Co*, 286 Mich App 528, 537; 780 NW2d 618 (2009). Instructional error will not warrant reversal unless it affected the outcome of the trial. MCR 2.613(A); *Jimkoski v Shupe*, 282 Mich App 1, 9; 763 NW2d 1 (2008). Ultimately, this issue depends on the interpretation and application of the no-fault act, a question of law reviewed de novo. *Bonkowski*, 281 Mich App at 164.

### B. ANALYSIS

The questions presented are what evidence is relevant and what courts should instruct jurors in deciding what constitutes a "reasonable charge" for reasonably necessary attendant-care services, under MCL 500.3107(1)(a), provided by a family member to another

member of the family injured in an automobile accident. Stated otherwise, how should fact-finders determine reasonable compensation for family members of the injured person who provide attendant care that is an allowable expense under the no-fault act? I find that the pertinent discussion of this issue in *Bonkowski* is persuasive dicta. "It is permissible for an appellate court to find dictum persuasive and decide to follow it." *Schoenherr v Stuart Frankel Dev Co*, 260 Mich App 172, 181; 679 NW2d 147 (2003) (WHITBECK, C.J., concurring). I also find that defendant's argument has logical merit, and is consistent with the limiting language of the no-fault act and the act's cost-containment public-policy goals. *Sokolek*, 450 Mich at 145 (opinion by BRICKLEY, C.J., and LEVIN, J.); *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 376-378; 670 NW2d 569 (2003). I would hold that the trial court erred by not granting defendant's motion in limine and also erred by refusing to instruct the jury as requested.[1] I would therefore reverse and remand for a new trial for these reasons as well.

---

[1] Defendant's proposed "Alternative A" jury instruction provides:

Family members are entitled to reasonable compensation for care provided to an injured person. In determining reasonable compensation for a family member who provides health care services, you may consider the compensation paid to licensed health care professionals who provide similar services. Amounts charged by health care agencies cannot be considered in determining reasonable compensation.

In determining the amount owed for care rendered by [a] member[s] of Plaintiff's family, you are to consider:

(1) the type and amount of care Plaintiff reasonably needed;

(2) the type and amount of services actually performed by [a] member[s] of Plaintiff's family;

(3) whether the family member was a licensed health care provider;

First, contrary to plaintiff's argument, *Manley*, 127 Mich App 444, is not controlling or binding legal precedent. *Manley* was decided before November 1, 1990, and was reversed by our Supreme Court, 425 Mich 140. Consequently, it lacks precedential authority. MCR 7.215(J); *Bradacs v Jiacobone*, 244 Mich App 263, 268-269; 625 NW2d 108 (2001), citing *Mitchell v Gen Motors Acceptance Corp*, 176 Mich App 23, 34; 439 NW2d 261 (1989). Moreover, the Supreme Court did not adopt, or even discuss, the pertinent statement in the Court of Appeals opinion that "comparison to rates charged by institutions provides a valid method for determining whether the amount of an expense was reasonable and for placing a value on comparable services performed by" family members. *Manley*, 127 Mich App at 455. As a result, there can be no remaining controlling or binding legal precedent from the Court of Appeals decision in *Manley* on the issue of family-provided attendant care. *Dunn v Detroit Auto Inter-Ins Exch*, 254 Mich App 256, 262; 657 NW2d 153 (2002).

Additionally, the issue presented in *Manley* concerned whether the parents of the injured plaintiff could claim as an allowable expense charges for room and board and nurse's aides for their son. See *Manley*, 127 Mich App at 451-455. While the Supreme Court affirmed this Court's ruling that insurers are obligated under the no-fault act to pay parents if they provide their children with services that are allowable expenses under the act, *Manley*, 425 Mich at 153, 159-160, the Court did not discuss methods for determining the

(4) the types of in-home care available from outside care providers; and

(5) the amounts outside care providers would have been paid to provide the type and amount of services Plaintiff received from [a] member[s] of [his/her] family.

value of such services. And, although the parents obtained an award for past services, this part of the award was not considered by either appellate court. *Id.* at 149. Thus, the Court in *Manley* did not decide the method of determining a reasonable charge for family-provided attendant care.

Despite its lack of precedential value, subsequent panels of this Court have cited the *Manley* dicta. In *Sharp v Preferred Risk Mut Ins Co*, 142 Mich App 499, 513; 370 NW2d 619 (1985), the Court found it reasonable for a mother to charge the no-fault insurer slightly more than what she paid for nurses and nurse's aides to care for her injured son. The Court reasoned that this compensated the mother for administrative services of "seeking, interviewing, selecting, training, and supervising the nurses" and "billing the insurance company, and paying the nurses." *Id.* The Court found this "consistent with *Manley*" and reasonable in that case because the "plaintiff charges less than similar institutions . . . ." *Id.* at 514. Because *Sharp* was decided before November 1, 1990, it also lacks binding precedential authority. MCR 7.215(J).

In *Reed v Citizens Ins Co of America*, 198 Mich App 443; 499 NW2d 22 (1993), overruled by *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 540 (2005), this Court again followed the *Manley* dicta. *Reed* noted that the *Sharp* Court had opined that "[t]he reasonableness of the [allowable] expenses incurred may be judged by comparison with rates charged by institutions." *Reed*, 198 Mich App at 453. Because our Supreme Court subsequently overruled *Reed*, it too has no binding precedential authority. *Mitchell*, 176 Mich App at 34.

Nevertheless, even though it lacks precedential authority, I find that the *Manley* Court correctly opined that " 'allowable expenses' . . . are implicitly purchased

by [the injured person] at their reasonable market value." *Manley*, 127 Mich App at 455. That is, the reasonable or market value of the attendant-care services plaintiff "purchased" from his parents is what they could receive by marketing similar services to unrelated purchasers when insurance is not involved. This would be consistent with the plain language of MCL 500.3107(1)(a), limiting allowable expenses to "reasonable charges." What payment plaintiff's parents could command on the open market would depend on their qualifications, training, experience, demand for the service, and other factors. What an agency might charge to provide a caregiver of such services is not relevant because it does not accurately reflect what the individual caregiver would earn.

The *Bonkowski* Court discussed these market principles in a case very similar to the present case in that it involved family-provided attendant care, and many of the same experts testified. The plaintiff in *Bonkowski* was severely injured, suffering not only traumatic brain injury but also spinal injuries that rendered him a quadriplegic. *Bonkowski*, 281 Mich App at 157-158. The plaintiff was discharged from the hospital to the care of his father, Andrew, who received some training from the hospital for that purpose but otherwise only had the educational equivalent of a high school degree. *Id.* at 158-159. Allstate, the no-fault insurer, agreed to pay Andrew approximately $166,000 a year to provide attendant care for the plaintiff, but the plaintiff demanded that Andrew be paid $34 an hour instead of the $19 an hour proposed by Allstate. *Id.* at 159. At trial, defense counsel contended that the testimony of plaintiff's experts based on "agency rates" would include a plethora of business expenses that Andrew would not incur. *Id.* at 161-162. Also, the defendant's claims adjuster testified that Allstate "was unwilling to pay the

agency rate for Andrew to care for plaintiff because an agency is licensed and incurs more expenses." *Id.* at 162. The jury returned a verdict in the plaintiff's favor. *Id.* at 163.

On appeal, the issue of using agency rates as a basis for determining the reasonableness of charges for family-provided attendant care was not squarely presented because Allstate had not argued in the trial court that *Manley* was wrongly decided. Nevertheless, the *Bonkowski* Court questioned the *Manley* dicta and opined:

> Under MCL 500.3107, family members are entitled to reasonable compensation for the services they provide at home to an injured person in need of care. In determining reasonable compensation for an unlicensed person who provides health care services, a fact-finder may consider the compensation paid to licensed health care professionals who provide similar services. For this reason, consideration of the compensation paid by health care agencies to their licensed health care employees for rendering services similar to the services provided by unlicensed family members is appropriate when determining reasonable compensation for those family members. However, the actual charges assessed by health care agencies in the business of providing such services is not relevant and provides no assistance in determining reasonable compensation for the actual provider of such services. The focus should be on the compensation provided to the person providing the services, not the charge assessed by an agency that hires health care professionals to provide such services. [*Bonkowski*, 281 Mich App at 164-165.]

In dicta, the *Bonkowski* Court opined that the market rate or reasonable charge that a family member providing attendant care may charge can be determined from evidence of what persons providing similar care would be paid, not by what an agency would be paid to provide a care worker to perform similar services. But,

the Court affirmed the jury verdict because Allstate did not properly preserve or properly present the issue in this Court and because substantial evidence documented Andrew's care of the plaintiff, the reasonableness of which was a question of fact for the jury. *Bonkowski*, 281 Mich App at 167-169.

The *Bonkowski* Court also addressed the issue of agency rates when it held that the trial court had erred by awarding attorney fees under MCL 500.3148(1) because Allstate had a bona fide factual basis to challenge the plaintiff's claim. On this point, the Court opined:

Neither the medical community nor the legal community has established a hard and fast rule for determining the reasonable rate of compensation due unlicensed individuals who provide necessary health care services to family members. While consideration of rates paid to licensed and trained health care providers is appropriate, the law does not require that unlicensed individuals who have not earned a degree in a pertinent health care profession be paid the same compensation paid to licensed health care professionals. It can hardly be disputed that the greater the time a health care professional invests in his or her education and training, the greater the compensation would be for that professional. Andrew received specialized training to allow him to provide professional quality care to his son in an array of disciplines. However, Andrew's training was provided over the course of four months. Andrew did not invest years to obtain an education and specialized training to become a medical professional. Quality care made possible by the dedication and love of family members is often preferable to institutional care. Yet, this Court has recognized that family-provided accommodations are generally less costly than institutional care. Under these circumstances we cannot conclude that defendant acted unreasonably when it offered to compensate Andrew at the lower end of the range of what a licensed and formally educated health care professional might ex-

pect to command in the open market. [*Bonkowski*, 281
Mich App at 172-173 (citation omitted).]

I would combine the reasoning of *Manley* that mar-
ket rates control what is a "reasonable charge" for
no-fault services with the reasoning of *Bonkowski* re-
garding the relevant market: what an individual care
provider would be paid. I would hold that a reasonable
charge for attendant-care services provided by a family
member is determined by what the family member
could receive in the open market for providing similar
services. So, under § 3107 a reasonable charge for any
attendant-care services plaintiff's parents provide is the
equivalent of what compensation they could command
on the open market for providing similar services to
unrelated persons. This, in turn, would depend on their
qualifications, training, experience, and what persons
providing similar services could earn. Perhaps the clos-
est market equivalent is what a health-care agency
might pay an "independent contractor" to provide simi-
lar services.

The companion case of *Mullins v Frank H Wilson Co*,
decided with *Sokolek*, 450 Mich 133, supports my con-
clusion that agency rates do not accurately reflect, and
therefore are not relevant to, the market rate of family-
provided attendant care. At issue in *Mullins* was
whether, in a workers' compensation case, Mullens's
wife was entitled to be compensated for attendant care
at an agency rate for a " 'homemaker companion' " or
at only half that rate as the cost to hire an independent
nurse's aide. *Id*. at 144 (opinion by BRICKLEY, C.J., and
LEVIN, J.). As in the no-fault act, MCL 418.315(1)
provides for "reasonable" services, which "refers not
only to the services to be performed, but to the compen-
sation to be paid to the provider of such services."
*Sokolek*, 450 Mich at 144-145 (opinion by BRICKLEY, C.J.,
and LEVIN, J.). The Court found the defendant's argu-

ment "that there is no reason why the plaintiff's wife should receive the extra money that an agency charges to address administrative costs" was "logically compelling . . . ." *Id.* at 145. The Court held, however, that the reasonable level of compensation was a multifaceted factual determination for the fact-finder to resolve. *Id.* at 145-146.

Another question presented here is whether a reasonable charge for family-provided attendant care would include shift premiums, overtime, and benefits that a health-care worker might earn if employed by an agency. The *Bonkowski* Court suggested that a reasonable charge by a family member for attendant care would not include shift premiums and overtime. *Bonkowski*, 281 Mich App at 173. The Court in *Mullins* suggested it may be necessary to include benefits similar to those earned by health-care workers. *Sokolek*, 450 Mich at 145-146 (opinion by BRICKLEY, C.J., and LEVIN, J.). Under the market analysis discussed above, shift premiums, overtime, and benefits would likely not factor into determining a reasonable charge for family-provided attendant care. Shift premiums and overtime are generally paid in circumstances when the law requires it or when necessitated by supply and demand to hire and retain people to work unpopular shifts. Family members providing services to other family members are not covered by labor laws; presumably, they are motivated by nonfinancial reasons. Similarly, health-care agencies pay their workers benefits to attract and retain employees. It seems unlikely that a family member marketing his or her health-care services outside the family could command both a salary and benefits as an independent contractor. On the other hand, if there were evidence to support it, the issue would be for the fact-finder to determine. *Id.* at 145; *Bonkowski*, 281 Mich App at 169.

My market analysis is also consistent with the cost-containment public policy goals of the no-fault act. " 'The basic goal of the no-fault insurance system is to provide individuals injured in motor vehicle accidents assured, adequate and prompt reparation for certain economic losses at the lowest cost to the individual and the system.' " *Advocacy Org*, 257 Mich App at 377, quoting *Gooden v Transamerica Ins Corp of America*, 166 Mich App 793, 800; 420 NW2d 877 (1988). With respect to holding health-care costs down, "the plain and ordinary language of § 3107 requiring no-fault insurance carriers to pay no more than reasonable medical [or other allowable] expenses, clearly evinces the Legislature's intent to place a check on health care providers who have no incentive to keep the doctor [or allowable expense] bill at a minimum." *McGill v Auto Ass'n of Mich*, 207 Mich App 402, 408; 526 NW2d 12 (1994) (quotation marks and citation omitted).

Finally, while I generally agree with the majority's discussion of relevance under MRE 401, I respectfully disagree with the majority's application of the "any tendency" standard in this circumstance where agency rates can only be said to be relevant *because* they encompass evidence at the heart of the issue: what individual caregivers are paid to provide the services at issue. The analogy of "[a] brick is not a wall" the majority discusses, see *People v Brooks*, 453 Mich 511, 518; 557 NW2d 106 (1996), quoting 1 McCormick, Evidence (4th ed), § 185, p 776, illustrates the problem with admitting evidence of agency rates in this case. Admitting evidence of agency rates in this case is akin to admitting evidence of the dimensions of a brick wall to prove the dimensions of the individual bricks that comprise the wall or admitting evidence of the cost to build the brick wall to estimate the cost of the individual bricks. In

either scenario, the evidence only establishes outer boundaries; it is not helpful to prove the fact at issue.

This point is illustrated in *People v Coy*, 243 Mich App 283; 620 NW2d 888 (2000). In a murder trial, the prosecution introduced evidence that the DNA of the defendant was consistent with blood found on a knife blade and on a doorknob but did not provide evidence of the likelihood of the potential match. The Court opined that without statistical-based interpretive testimony the DNA evidence lacked " 'relevance or meaning to the trier of fact' " and was " ' "meaningless" to the jury and, thus, inadmissible.' " *Id.* at 298-299, quoting *Nelson v State*, 628 A2d 69, 76 (Del, 1993). Even though the DNA evidence clearly satisfied the "any tendency" standard of relevancy, the Court held that without the interpretive evidence, the DNA evidence "was insufficient to assist the jury in determining whether defendant contributed DNA to the mixed sample." *Coy*, 243 Mich App at 301. As an alternative, the Court also concluded that the DNA should have been excluded under MRE 403 because " 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.' " *Coy*, 243 Mich App at 302.

In the present case, evidence of agency rates is only relevant to determine a reasonable rate to compensate family members providing attendant care if there is also evidence separating the component of an agency's hourly fee that represents that which is necessary to compensate an individual caregiver providing similar services. *Bonkowski*, 281 Mich App at 164-165. Assuming such evidence is available, the only purpose for admitting evidence of the agency rate would be to confuse or mislead the jury into believing it reasonable to compensate family members for care provided by

them as if they were for-profit health-care providers
having satisfied all the requisites to be engaged in such
a business. In light of the purposes of the no-fault act, I
would hold such a level of compensation for family-
provided care would not be a "reasonable charge"
within the meaning of MCL 500.3107(1)(a).[2] I conclude
that agency rates are not relevant to prove a "reason-
able charge" for family-provided attendant care, but to
the extent the evidence satisfies the "any tendency"
standard of MRE 401, it should be excluded because the
evidence's "probative value is substantially outweighed
by the danger of . . . confusion of the issues, or mislead-
ing the jury . . . ." MRE 403.

## II. MOTIONS FOR A DIRECTED VERDICT

Defendant argues that because plaintiff's parents did
not testify at trial, there was no evidence that they
actually provided the high level of care that plaintiff
sought as an allowable expense. As a result, defendant
argues, plaintiff failed to prove the care his parents
provided was entitled to compensation at a rate higher
than that of a health aide, which defendant had already
paid. Consequently, defendant argues, the trial court
erred by not granting it a directed verdict. Alternatively,
defendant argues that the trial court erred by granting
plaintiff a directed verdict on the issue that the higher
level of attendant care had been "incurred." Defendant
notes that while some level of care was incurred, the
lack of evidence plaintiff presented entitled defendant,
on plaintiff's motion for a directed verdict, to the
reasonable inference that the care provided was at the

---

[2] All activities in life have "opportunity costs" and I read nothing in the
no-fault act or MCL 500.3107(1)(a) in particular that permits anyone—
whether or not a family member—to recover as part of a "reasonable
charge" for an "allowable expense" the cost of opportunities foregone.

lower level of a basic health aide. I conclude that the trial did not err by denying defendant's motion but did err by granting plaintiff's motion. The determination of a reasonable charge for the attendant care at issue should have been left for a properly instructed jury to decide.

## A. PRESERVATION

Defendant opposed granting plaintiff's motions for a directed verdict that attendant care had been "incurred" and limiting the jury's consideration of a "reasonable" rate to charge for the care to between $25 and $45 an hour. Defendant also moved for a directed verdict on the issue that plaintiff had not presented proof that plaintiff's parents actually proved a higher level of care than that for which defendant had already paid. Thus, these issues are properly preserved because they were raised, addressed, and decided by the trial court.

## B. STANDARD OF REVIEW

A trial court's decision on a motion for a directed verdict is reviewed de novo. *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 131; 666 NW2d 186 (2003). The evidence presented up to the point of the motion and all legitimate inferences from the evidence must be viewed in the light most favorable to the nonmoving party to determine whether a fact question existed. *Heaton*, 286 Mich App at 532. It is for the jury to weigh the evidence and decide the credibility of the witnesses. *King v Reed*, 278 Mich App 504, 523 n 5; 751 NW2d 525 (2008). A trial court properly grants a directed verdict only when no factual question exists upon which reasonable minds could differ. *Heaton*, 286 Mich App at 532.

C. ANALYSIS

On review of the record, I conclude that the trial court properly denied defendant's motion for a directed verdict on the basis of the lack of proof that the claimed attendant-care hours had been "incurred." The jury could reasonably infer the attendant-care hours were incurred from calendar time records submitted to defendant, the medical prescriptions for attendant care, Dr. Gerald Shiener's testimony that plaintiff's parents provided the prescribed attendant care, and defendant's payment of the attendant-care hours claimed. Indeed, there was no evidence from which the jury could conclude that the claimed attendant-care hours were not "incurred." Therefore, the trial court properly granted plaintiff's motion for a directed verdict on this issue.

On the other hand, under the no-fault act, "allowable expenses" must be "reasonable charges," MCL 500.3107(1)(a), and a person providing an injured person services "may charge a reasonable amount for . . . services," MCL 500.3157. "When read in harmony, §§ 3107 and 3157 clearly indicate that an insurance carrier need pay no more than a reasonable charge and that a health care provider can charge no more than that." *McGill*, 207 Mich App at 406. Further, although the trial court properly directed a verdict in plaintiff's favor by finding that the attendant care was "incurred," it did not decide the distinct question of what a reasonable charge for those services should be. *Bonkowski*, 281 Mich App at 165. The determination of a reasonable charge for an allowable product, service, or accommodation is generally for the jury to determine as a question of fact. *Id.* at 169, citing *Advocacy Org*, 257 Mich App at 379, and *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 55; 457 NW2d 637 (1990).

Here, evidence presented to the jury would permit it to infer that a reasonable charge for the services plaintiff's parents provided was less than the limited range the trial court's instructions permitted. Specifically, the jury could reasonably infer from the testimony of Dr. Robert Ancell that live-in health-care workers and independent contractors might receive compensation at a lesser hourly rate. Further, Dr. Ancell described attendant care for "safety purposes" as follows: "[A]t the lowest level of responsibility is somebody who's a companion, like a baby sitter. Okay. Somebody who is just there, may get something for somebody, basically for safety purposes. No medical training, basically a companion. They typically make $10 an hour." The jury also heard Dr. Shiener describe plaintiff as like an 11 year old in an adult body. Dr. Shiener also testified that plaintiff needed supervision for his own safety from "someone who knows how to manage behavior and knows how to interact with him in a skillful way, can be there to make sure that he's safe, that he doesn't do anything dangerous. . . . To discourage him from doing something that he's made his mind up to do when it's a bad idea." Although Dr. Shiener testified that he described a "behavioral technician or a life skills trainer . . . more than just a babysitter or a home health aide," the jury might have inferred that the skill level he described was what most parents or guardians do naturally. Finally, from evidence that defendant paid the claimed attendant-care hours at the rate of $10.25 or $10.50 an hour, the jury could have reasonably inferred that this rate represented a reasonable rate of compensation for the services rendered. "Once plaintiffs charge the insured, the insurer then makes its own determination regarding what is reasonable and pays that amount to plaintiffs." *Advocacy Org*, 257 Mich App at 379 n 4. So, evidence existed, viewed in the light most favorable to

defendant, that would permit the jury to infer that a reasonable charge for attendant-care services in this case was less than the range to which the trial court restricted the jury's determination.

Additionally, the trial court erred by limiting the jury's determination of a reasonable rate of compensation because it is the jury's responsibility to weigh the evidence and judge the credibility of witnesses. *King*, 278 Mich App at 522. The jury could have chosen to reject the evidence that supported plaintiff's theory of compensation. *Id.* at 523. " '[T]he jury is free to credit or discredit any testimony.' " *Id.* at 523 n 5, quoting *Kelly v Builders Square, Inc*, 465 Mich 29, 39; 632 NW2d 912 (2001). For example, in *Manley*, in determining a reasonable room and board charge, the "plaintiffs relied upon evidence that the Oakland County Medical Care Facility charged $78 per day" and the defendant relied upon evidence that the plaintiff "could be accommodated in a nursing home at $48 per day." *Manley*, 127 Mich App at 454. The jury rejected this evidence when it determined that $30 a day was a reasonable charge for providing room and board. *Manley*, 425 Mich at 154 n 13.

For these reasons, I conclude that the trial court erred by limiting the jury's determination regarding a reasonable charge for the attendant-care services that plaintiff's parents provided and that this error also warrants reversal and remand for a new trial.

### III. CONCLUSION

I agree with the majority that the trial court abused its discretion by imposing a sanction for a discovery violation that was not just or proportionate to the violation. The disproportionate discovery sanction that precluded defendant from presenting any witnesses or

evidence at trial and the inability of defendant to confront plaintiff's parents regarding the attendant care they provided combined to deny defendant a fundamentally fair trial. Consequently, I agree that the judgment entered in this matter must be vacated and the order for sanctions must be set aside.

I also conclude that the trial court erred by not granting defendant's motion in limine regarding evidence of agency rates, by refusing to give supplemental jury instructions as requested, and by limiting the jury's fact-finding ability when determining a reasonable charge for the attendant care at issue. These errors also warrant reversal and remand for a new trial.

Because of the resolution of the issues raised in Docket No. 294875, the issues in Docket Nos. 298661 and 299070 are moot.